UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

HARRISON NGEAH MISSIBI,
*Plaintiff*,

v.

LENTO LAW GROUP, P.C.;
LAWRENCE A. KATZ; and
KRISTI KAY KNEEDLER,
*Defendants*.

Civil Action No. _____

## COMPLAINT AND DEMAND FOR JURY TRIAL

1. Plaintiff Harrison Ngeah Missibi brings this action against Defendants Lento Law Group, P.C., d/b/a LLG National Law Group, ("Lento"), Lawrence A. Katz, Esq. ("Katz"), and Kristi Kay Kneedler, Esq. ("Kneedler," collectively, "Defendants"), and alleges as follows:

## THE PARTIES

2. Plaintiff Harrison Ngeah Missibi ("Missibi" or "Plaintiff") is an individual who resides and at all relevant times resided in the Commonwealth of Massachusetts and is a citizen of Massachusetts for purposes of diversity jurisdiction.

3. Upon information and belief, Defendant Lento Law Group, P.C., d/b/a LLG National Law Group, is a professional corporation organized under the laws of New Jersey, with a principal place of business at 525 Route 73 North, Suite 104, Marlton, NJ 08052.

4. Upon information and belief, Defendant Katz is citizen of New Jersey, admitted to practice law in the State of New Jersey with New Jersey Bar Number 027051988, and was at all relevant times affiliated with Lento with business addresses at 3000 Atrium Way, Suite 200, Mt. Laurel, New Jersey 08054, and 1650 Market Street, Suite 3600, Philadelphia, Pennsylvania 19103.

5.      Upon information and belief, Defendant Kneedler is citizen of Texas, admitted to practice law in the State of Texas, with Texas Bar Number 24107834, and was at all relevant times affiliated with Lento with business addresses at 3000 Atrium Way, Suite 200, Mt. Laurel, New Jersey 08054, and 221 N. Kansas St, Suite 700, El Paso, TX 79907.

6.      At all relevant times, Katz and Kneedler acted individually and as agents, servants, employees, and/or apparent agents of Lento, and their acts and omissions were undertaken within the scope of that relationship and under the authority, supervision, or ratification of Lento.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) due to complete diversity of citizenship between Plaintiff and all Defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in this District, a substantial part of the injuries giving rise to the claims were suffered in this District, and Defendants purposefully availed themselves of this District by providing services to a client who was a citizen and resident of Massachusetts, conduct which included material communications and legal advice which serves as the factual basis for this Complaint.

## INTRODUCTION

9.      This is a legal malpractice and consumer protection action arising from Defendants' representation of Plaintiff in a proceeding before the New Hampshire Board of Nursing.

10.     Defendants undertook to represent Plaintiff in a matter carrying life-altering professional consequences despite lacking authorization to practice law in the jurisdiction where the proceeding was pending, failed to secure proper admission or duly licensed local counsel, misrepresented their authority and the consequences of the proposed resolution, and procured a consent agreement that resulted in revocation of Plaintiff's nursing license.

11.     Plaintiff did not knowingly consent to a revocation of his license. Plaintiff understood, based on Defendants' advice, that the matter would be resolved in a materially different fashion, including by voluntary surrender or another disposition that would not impose the same professional and collateral consequences as a revocation.

12.     As a direct and proximate result of Defendants' conduct, Plaintiff has been unable to secure nursing employment he otherwise would have obtained, has been unable to obtain licensure in Massachusetts for approximately a year because of the New Hampshire discipline, has suffered loss of income and earning capacity, has incurred legal fees in attempting to remedy the damage Defendants caused, and has suffered emotional distress and reputational harm.

13.     The unfair and deceptive representations at issue were made to a Massachusetts resident, were received and relied upon in Massachusetts, and produced substantial injury centered in Massachusetts, including the ongoing inability to obtain a Massachusetts nursing license and employment in Massachusetts.

## FACTUAL ALLEGATIONS

14.     Plaintiff Missibi is a licensed practical nurse educated and trained in Cameroon who, before the events described herein, sought to pursue nursing licensure and employment in the United States.

15.     As Plaintiff Missibi could not obtain authenticated copies of his nursing degree and transcripts from Cameroon due to institutional limitations in that country, in an effort to comply with licensing requirements in the United States, he enrolled in the Quisqueya School of Nursing (a/k/a Sunshine Academy), a Florida-based institution which, unbeknownst to him, was involved in a fraudulent diploma and transcript scheme.

16.     On or about March 3, 2023, a complaint was tendered to the State of New Hampshire Board of Nursing ("NHBN"), later docketed on June 22, 2023, as In the Matter of Missibi Harrison, Docket No. 2023-NUR-045, asserting that Plaintiff Missibi had submitted fraudulent documentation as part of his application to practice in that state, arising in connection with issues related to Operation Nightingale, a federal investigation into fraudulent nursing school diplomas and transcripts.

17.     At all times in the course of the New Hampshire proceeding, Plaintiff Missibi contended, among other things, that he had prior legitimate Cameroonian nursing education and that he had been victimized by the fraudulent school scheme rather than acting as a knowing perpetrator.

17.     On or about October 6, 2023, Plaintiff contacted Lento, which represents itself as a nationwide, full-service law firm, seeking legal services in relation to the pending NHBN complaint.

18.     On or about October 6, 2023, Lento's "law support team" responded to Missibi, soliciting a $350 "consultation fee" to obtain further information from him regarding his case, which he paid the same day.

19.     On or about October 12, 2023, Plaintiff Missibi contacted Lento again, as he had received no response; he specifically indicated that he had upcoming dates in the NHBN proceeding for which he required legal representation.

20.     Beginning on or about October 20, 2023, Lento assigned Defendant Kneedler to Missibi's case, and she thereafter undertook to represent Plaintiff Missibi in relation to his NHBN proceeding despite not having a license to practice in New Hampshire.

21.     Plaintiff Missibi specifically retained Defendants Lento and Kneedler to represent him in the professional disciplinary matter before the NHBN.

22.     Between October 2023, and February 2024, Defendant Kneedler communicated legal advice and strategic recommendations to Plaintiff Missibi in Massachusetts and acted on his behalf in the NHBN proceeding without obtaining pro hac vice admission or affiliating with any attorney licensed to practice law in either Massachusetts or New Hampshire.

23.     Between October 2023 and February 9, 2024, Defendant Kneedler purposefully availed herself of the District of Massachusetts by assuming legal representation of Plaintiff Missibi, a course of conduct which included the communication of legal advice and strategic recommendations; she knew or should have known Plaintiff was located in Massachusetts and that the practical and professional consequences of any disciplinary resolution would be borne by Plaintiff in Massachusetts.

24.     On or about November 7, 2023, NHBN, though its prosecutor Atty. John Garrigan ("Atty. Garrigan"), made a settlement proposal to Missibi for a voluntary surrender of his license, which Defendant Kneedler recommended he reject that same day. Plaintiff Missibi relied on Defendant Kneedler's advice in rejecting the proposed settlement.

25.     On February 9, 2024, Defendant Kneedler contacted Plaintiff to inform him that she had found a New Hampshire attorney with whom to associate, and she planned to continue with his representation.

26.     At some point between February 9, 2024, and May 13, 2024, Defendant Kneedler's employment with Lento ended, and she withdrew from Plaintiff Missibi's representation without informing him.

27.     At some point prior to May 12, 2024, Defendant Kneedler's affiliated local counsel, Larry Vogelman ("Atty. Vogelman"), withdrew from Plaintiff's representation, a fact which Lento failed to disclose to Plaintiff Missibi.

28.     Lento took no action prior to May 13, 2024, to replace Defendant Kneedler or Atty. Vogelman as Plaintiff's Missibi's counsel in the NHBN matter, resulting in him presenting for a scheduled proceeding on that date without legal representation.

29.     On or about May 22, 2024, Joseph Lento—on information and belief a principal of Lento—contacted Plaintiff Missibi to inform him that Defendant Katz would be assuming his representation in the NHBN matter without advising him that Defendant Katz was not licensed to practice law in either Massachusetts or New Hampshire.

30.     On May 23, 2024, Defendant Katz affirmatively contacted Plaintiff Missibi to advise him that he was taking over his representation in the ongoing NHBN proceeding.

31.     Beginning on May 23, 2024, Defendant Katz purposefully availed himself of the District of Massachusetts by assuming legal representation of Plaintiff Missibi, a course of conduct which included the communication of legal advice and strategic recommendations pertaining to the NHBN proceeding, culminating in the execution of a consent agreement executed on October 24, 2024, which resulted in the revocation of Plaintiff's New Hampshire license.

32.     Defendant Katz undertook to represent Plaintiff in the NHBN matter even though Katz was not licensed to practice law in New Hampshire. Upon information and belief, Katz did not obtain pro hac vice admission in that proceeding and did not associate with duly licensed New Hampshire counsel.

6

33.    At all relevant times, Plaintiff was residing in Massachusetts. Defendants knew Plaintiff was located in Massachusetts, communicated legal advice and strategic recommendations to him in Massachusetts, and understood that the practical and professional consequences of any disciplinary resolution would be borne by Plaintiff in Massachusetts.

34.    The issue of out-of-state counsel's lack of New Hampshire licensure was raised during the disciplinary process, including by the presiding officer and/or the prosecutor.

35.    Despite those concerns, Defendants continued to act as Plaintiff's counsel, to advise him on material decisions, and to negotiate a resolution of the matter.

36.    Defendants represented to Plaintiff, expressly and/or by necessary implication, that they were authorized to act as his counsel in the New Hampshire proceeding, that they could validly negotiate and consummate a binding resolution on his behalf, and that Plaintiff's interests were being protected through that process.

37.    Defendants further represented to Plaintiff, directly and through their advice about the proposed disposition, that the resolution contemplated by the consent order was materially different from a revocation and that Plaintiff would not suffer the full scope of collateral licensing and employment consequences that in fact followed.

38.    Defendants' communications to Plaintiff were made by email, telephone, videoconference, and/or other direct communications directed to and received by Plaintiff in Massachusetts.

39.    Plaintiff relied on Defendants' advice and representations in Massachusetts.

40.    Plaintiff did not knowingly, voluntarily, and with full understanding consent to the final disposition of the NHBN proceeding that was entered against him.

41.    A consent agreement and corresponding order were ultimately entered in the New Hampshire matter, and that disposition reflected a revocation of Plaintiff's nursing license. *See* Consent Agreement and Final Order, attached hereto as Exhibit A.

42.    By representing that the Plaintiff had the opportunity to seek and obtain the advice of counsel in choosing to execute the consent agreement, the consent agreement and related filings reflected or implied that counsel was authorized to appear on Plaintiff's behalf in New Hampshire, when in fact Defendants lacked the required New Hampshire licensure or admission status. *See* Exhibit A.

43.    Defendants failed to adequately explain to Plaintiff the difference between revocation and voluntary surrender, the reporting consequences of revocation, the likely effect of revocation on future licensing applications, the likely effect of revocation on professional background checks, and the likelihood that a revocation would operate as a continuing bar to employment opportunities.

44.    As a direct and proximate result of Defendants' conduct, Plaintiff's record now reflects a New Hampshire revocation. That revocation appears in licensing and employment screening processes and has materially impaired Plaintiff's ability to work as a nurse.

45.    Since the entry of the New Hampshire discipline, Plaintiff has been unable to secure at least one job he otherwise would have obtained because the revocation appeared as a black mark during screening.

46.    Plaintiff also applied for registered nursing license in Massachusetts, but on information and belief his application has been delayed or effectively stalled for approximately a year because of the New Hampshire matter and the revocation Defendants caused or materially contributed to.

47.    Plaintiff has suffered lost wages, loss of earning capacity, delay in and impairment of future licensure, out-of-pocket legal fees, reputational injury, and emotional distress, all of which were foreseeable consequences of Defendants' misconduct.

### COUNT I
### MASSACHUSETTS COMMON-LAW LEGAL MALPRACTICE (NEGLIGENCE) AGAINST DEFENDANT KATZ

48.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

49.    Katz owed Plaintiff a duty to exercise the degree of care, skill, diligence, and competence commonly possessed and exercised by reasonably careful attorneys in like circumstances.

50.    Katz breached that duty, including by undertaking representation in a jurisdiction where he was not authorized to practice, failing to secure pro hac vice admission or duly licensed New Hampshire counsel, failing to provide competent advice regarding the consequences of the proposed disposition, and negotiating and/or executing a resolution that did not reflect Plaintiff's informed consent.

51.    As a direct and proximate result of Katz's negligence, Plaintiff suffered the damages alleged herein.

### COUNT II
### MASSACHUSETTS COMMON-LAW LEGAL MALPRACTICE (NEGLIGENCE) AGAINST DEFENDANT KNEEDLER

52.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

53.    Kneedler owed Plaintiff a duty to exercise reasonable care and competence in connection with her participation in the representation.

9

54.    Kneedler breached that duty, including by providing legal counsel recommending Plaintiff reject a proposed settlement agreement by Atty. Garrigan on November 7, 2023, and thereafter appearing or participating in at least one New Hampshire disciplinary matter without authorization to practice there, failing to ensure that Plaintiff had duly licensed New Hampshire counsel, and assisting in or failing to correct the deficient representation that culminated in the consent agreement and revocation.

55.    As a direct and proximate result of Kneedler's negligence, Plaintiff suffered the damages alleged herein.

<u>**COUNT III**</u>
**MASSACHUSETTS COMMON-LAW BREACH OF FIDUCIARY DUTY AGAINST DEFENDANT KATZ**

56.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

57.    Katz owed Plaintiff fiduciary duties of loyalty, candor, disclosure, honesty, and faithful service.

58.    Katz breached those duties by failing to fully disclose his lack of authorization to practice in New Hampshire, misrepresenting or allowing the misimpression that he was authorized to act as counsel there, failing to fully explain the consequences of the proposed disposition, and acting in a manner inconsistent with Plaintiff's informed interests.

59.    As a direct and proximate result of Katz's breach of fiduciary duty, Plaintiff suffered the damages alleged herein.

## COUNT IV
## MASSACHUSETTS COMMON-LAW BREACH OF FIDUCIARY DUTY AGAINST DEFENDANT KNEEDLER

60.     Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

61.     Kneedler owed Plaintiff fiduciary duties arising from her participation in the attorney-client relationship and representation.

62.     Kneedler breached those duties by participating in unauthorized and deficient representation, by failing to ensure proper and lawful representation in New Hampshire, and by assisting in or failing to correct conduct that deprived Plaintiff of informed and valid consent.

63.     As a direct and proximate result of Kneedler's breach of fiduciary duty, Plaintiff suffered the damages alleged herein.

## COUNT V
## MASSACHUSETTS COMMON-LAW FRAUD / INTENTIONAL MISREPRESENTATION AGAINST DEFENDANT KATZ

64.     Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

65.     Katz made false representations of material fact to Plaintiff, including but not limited to representations, express or implied, that Katz was authorized to act as Plaintiff's counsel in the New Hampshire proceeding, that Katz could validly negotiate and consummate a binding disciplinary resolution on Plaintiff's behalf, and that the proposed resolution would not carry the full consequences of a revocation reflected in the final disposition.

66.     At the time the representations were made, Katz knew they were false or acted with reckless disregard for their truth or falsity.

67.     Katz intended that Plaintiff rely on those representations in deciding how to proceed in the New Hampshire matter.

11

68. Plaintiff reasonably relied on Katz's representations in Massachusetts and suffered damages as a direct and proximate result.

**COUNT VI**
**MASSACHUSETTS COMMON-LAW FRAUD / INTENTIONAL MISREPRESENTATION AGAINST DEFENDANT KNEEDLER**

69. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

70. To the extent Kneedler made, transmitted, endorsed, adopted, or knowingly failed to correct materially false or misleading representations concerning the adequacy of the representation, counsel's authority to act in New Hampshire, or the nature and consequences of the proposed disposition, such representations were false or misleading.

71. At the time of such representations or omissions, Kneedler knew or should have known that they were false or misleading.

72. Plaintiff reasonably relied on those representations and omissions in Massachusetts and suffered damages as a direct and proximate result.

**COUNT VII**
**MASSACHUSETTS COMMON-LAW NEGLIGENT MISREPRESENTATION AGAINST DEFENDANT KATZ**

73. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

74. In the course of providing professional services, Katz supplied false information for the guidance of Plaintiff in his business and professional affairs, including false information about Katz's authority to represent Plaintiff in New Hampshire and the legal consequences of the proposed resolution.

75. Katz failed to exercise reasonable care or competence in obtaining or communicating that information.

76.    Plaintiff justifiably relied on Katz's negligent misrepresentations in Massachusetts and suffered damages as a direct and proximate result.

## COUNT VIII
### MASSACHUSETTS COMMON-LAW NEGLIGENT MISREPRESENTATION AGAINST DEFENDANT KNEEDLER

77.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

78.    In the course of providing professional services, Kneedler supplied, endorsed, or failed to correct false or misleading information concerning the representation, counsel's authority, and/or the consequences of the proposed disposition.

79.    Kneedler failed to exercise reasonable care or competence in obtaining, transmitting, or correcting that information.

80.    Plaintiff justifiably relied on Kneedler's negligent misrepresentations in Massachusetts and suffered damages as a direct and proximate result.

## COUNT IX
### MASSACHUSETTS COMMON-LAW AIDING AND ABETTING TORTIOUS CONDUCT AGAINST DEFENDANT KNEEDLER

81.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

82.    Katz committed one or more tortious acts as alleged herein, including negligence, breach of fiduciary duty, fraud, and negligent misrepresentation.

83.    Kneedler knew or should have known of Katz's lack of authorization to practice in New Hampshire and of the misleading nature of the representations made to Plaintiff.

84.    Kneedler substantially assisted, encouraged, facilitated, ratified, and/or failed to stop Katz and Lento's tortious conduct by participating in the representation on behalf of Lento, acting on Lento's behalf in the proceeding, and failing to ensure that Plaintiff had ongoing representation in his NHBN matter at the time of her withdrawal,.

13

69.     As a direct and proximate result, Plaintiff suffered the damages alleged herein.

## COUNT X
### MASSACHUSETTS COMMON-LAW RESPONDEAT SUPERIOR / VICARIOUS LIABILITY AGAINST DEFENDANT LENTO LAW GROUP, P.C.

70.     Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

71.     At all relevant times, Katz and Kneedler were acting as agents, servants, employees, partners, apparent agents, and/or representatives of Lento and were acting within the course and scope of that relationship.

72.     Lento is vicariously liable for the tortious conduct, malpractice, misrepresentations, and other wrongful acts and omissions of Katz and Kneedler as alleged herein.

## COUNT XI
### MASSACHUSETTS COMMON-LAW AIDING AND ABETTING FRAUD AND OTHER TORTIOUS CONDUCT AGAINST DEFENDANT LENTO LAW GROUP, P.C.

73.     Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

74.     Upon information and belief, Lento knew or should have known that Katz and/or Kneedler were representing Plaintiff in a New Hampshire disciplinary matter without the required New Hampshire licensure or admission and that false or misleading statements were being made to Plaintiff about counsel's authority and the consequences of the proposed resolution.

75.     Lento substantially assisted, encouraged, facilitated, ratified, and benefited from that conduct by permitting the representation to proceed under its name, authority, and firm resources, by failing to stop or correct the misconduct, and by cloaking Katz and Kneedler with institutional legitimacy.

76.     As a direct and proximate result, Plaintiff suffered the damages alleged herein.

14

## COUNT XII
### MASSACHUSETTS COMMON-LAW INDEMNIFICATION AGAINST ALL DEFENDANTS

77.     Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

78.     To the extent Plaintiff has incurred or will incur losses, liabilities, obligations, fees, expenses, or other damages arising from the New Hampshire discipline and its consequences, such losses were caused by Defendants' acts and omissions as alleged herein.

79.     Defendants are therefore liable, jointly and severally and/or in the alternative, to indemnify Plaintiff for those losses to the fullest extent permitted by law.

## COUNT XIII
### VIOLATION OF M.G.L. c. 93A AGAINST DEFENDANTS KATZ AND LENTO

80.     Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

81.     Defendants engaged in unfair and deceptive acts and practices in trade or commerce, including representing or implying that they were authorized to provide legal representation in the New Hampshire disciplinary matter, failing to disclose material limitations on their authority and ability to lawfully act as counsel, misrepresenting the nature and consequences of the proposed resolution, and causing Plaintiff to enter into or acquiesce in a disposition he did not knowingly and voluntarily accept.

82.     Those unfair and deceptive acts and practices were directed to a Massachusetts resident and were communicated to Plaintiff in Massachusetts by email, telephone, videoconference, and other direct communications.

83.     Plaintiff received, relied upon, and acted on those communications in Massachusetts.

15

84.     The resulting harm occurred primarily and substantially within Massachusetts, including Plaintiff's inability to obtain Massachusetts registered nurse license, denial of Massachusetts employment opportunities, financial and emotional harm suffered while residing in Massachusetts, and ongoing professional injury centered in Massachusetts.

85.     Defendants' conduct was willful and knowing, entitling Plaintiff to all relief available under Chapter 93A, including actual damages, multiple damages where appropriate, attorneys' fees, costs, and such other relief as the Court deems just.

## DAMAGES

86.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer loss of his nursing license, loss of employment opportunities, lost wages, loss of earning capacity, delay and impairment in obtaining licensure in other jurisdictions including Massachusetts, legal fees and costs, reputational harm, and emotional distress.

87.     Plaintiff seeks all compensatory damages permitted by law.

88.     Plaintiff further seeks multiple damages, attorneys' fees, and costs to the extent permitted under applicable law, including Mass. Gen. Laws ch. 93A.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

a.      Enter judgment in favor of Plaintiff and against Defendants on all counts;

b.      Award Plaintiff compensatory damages in an amount to be determined at trial but not less than $3,000,000;

c.      Award Plaintiff multiple damages, attorneys' fees, and costs to the extent permitted by law;

d.  Award pre-judgment and post-judgment interest as permitted by law;

e.  Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,
The Plaintiff,
**HARRISON NGEAH MISSIBI**,
By His Attorney,

/s/ Sean E. Capplis
Sean E. Capplis, BBO #634740
CAPPLIS, CONNORS, CARROLL & ENNIS, PC
66 Brooks Drive, 2nd Floor
Braintree, MA 02184
T: 6l7-227-0722
F: 617-227-0772
E: scapplis@ccclaw.org

Date: July 31, 2026

17