FILED
IN CLERKS OFFICE
2026 OCT 14 A 10:38
U.S. DISTRICT COURT
DISTRICT OF MASS.

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT KRISTI KAY KNEEDLER'S MOTION TO DISMISS

## INTRODUCTION

Plaintiff seeks at least $3,000,000 from a lawyer who worked on his New Hampshire nursing-board matter for about four months and left it eight months before it ended. Lento Law Group, P.C. ("Lento") assigned Ms. Kneedler to Plaintiff's matter in October 2023. She stopped working for Lento on February 23, 2024. Lawrence A. Katz took over the representation in May 2024. The consent agreement that Plaintiff blames for his injuries was executed on October 24, 2024.

The Complaint attributes one concrete act to Ms. Kneedler. On November 7, 2023, she recommended that Plaintiff reject the New Hampshire prosecutor's proposal for a voluntary surrender of his license. The remaining allegations against her either repeat allegations aimed at Mr. Katz or are pleaded only "[t]o the extent" she did something at all.

The claims fail for two independent reasons. First, this Court lacks personal jurisdiction over Ms. Kneedler. The Massachusetts long-arm statute does not reach her conduct, and under *Sawtelle v. Farrell*, 70 F.3d 1381 (1st Cir. 1995), remote advice to a client about an out-of-state proceeding does not subject a lawyer to suit in the client's home state. Second, the Complaint does not plausibly allege that Ms. Kneedler's early advice caused any loss. It also pleads no statement she made, no tort she knowingly assisted, and no basis for indemnity.

## FACTUAL BACKGROUND

For this motion only, Ms. Kneedler accepts the Complaint's well-pleaded facts but not its legal conclusions. Jurisdictional facts outside the Complaint come from the accompanying Declaration of Kristi Kay Kneedler ("Kneedler Decl.").

**The parties.** Plaintiff resides in Massachusetts. Compl. ¶ 2. The Complaint alleges that Ms. Kneedler is a Texas citizen with business addresses in New Jersey and Texas. Compl. ¶ 5. In fact, Ms. Kneedler has been domiciled in Florida since 2024. Kneedler Decl. ¶ 2. She has never held a Massachusetts law license, maintained an office in Massachusetts, traveled to Massachusetts for Plaintiff's matter, or communicated with the Massachusetts Board of Registration in Nursing. Kneedler Decl. ¶¶ 4-7.

**The New Hampshire proceeding.** In 2023, the New Hampshire Board of Nursing ("NHBN") opened a proceeding asserting that Plaintiff had submitted fraudulent documentation with his application to practice in New Hampshire. Compl. ¶ 16. Plaintiff had enrolled in a Florida institution that was involved in a fraudulent diploma and transcript scheme. Compl. ¶ 15. Throughout the proceeding, Plaintiff maintained that he had been victimized by that scheme rather than acting as a knowing perpetrator. Compl. ¶ 17.

**Ms. Kneedler's involvement.** Plaintiff contacted Lento on or about October 6, 2023, seeking representation in the NHBN proceeding. Compl. ¶ 17. Lento assigned Ms. Kneedler to the matter beginning on or about October 20, 2023. Compl. ¶ 20. On November 7, 2023, the NHBN prosecutor proposed that Plaintiff voluntarily surrender his license. Upon information and belief, Ms. Kneedler recommended that Plaintiff reject that proposal, and Plaintiff did so. Compl. ¶ 24. On February 9, 2024, Ms. Kneedler told Plaintiff that she had found a New Hampshire attorney to associate with. Compl. ¶ 25. The Complaint identifies that attorney, Larry Vogelman, as her "affiliated local counsel." Compl. ¶ 27. The Complaint alleges that Ms. Kneedler's employment with Lento ended at some point between February 9 and May 13, 2024. Compl. ¶ 26. The actual date was February 23, 2024. Kneedler Decl. ¶ 8.

**Events after Ms. Kneedler left.** After Ms. Kneedler's departure, Attorney Vogelman withdrew, and Lento did not replace either of them before a May 13, 2024 proceeding. Compl. ¶¶ 27-28. On May 22 and 23, 2024, Lento and Mr. Katz told Plaintiff that Mr. Katz would take over the representation. Compl. ¶¶ 29-30. Mr. Katz's representation culminated in a consent agreement executed on October 24, 2024. Compl. ¶ 31. Plaintiff alleges that he did not understand the consequences of that disposition and that Defendants misdescribed it to him. Compl. ¶¶ 37, 40, 43.

## STANDARD OF REVIEW

Plaintiff bears the burden of establishing personal jurisdiction over Ms. Kneedler. *Sawtelle*, 70 F.3d at 1387. Under the prima facie standard, the Court draws the facts from the pleadings and the parties' supplementary filings, including affidavits, taking facts affirmatively alleged by Plaintiff as true and viewing disputed facts in his favor. *Id.* at 1386. The Court does not credit conclusory allegations or farfetched inferences. *Id.* at 1386 n.1.

To survive a Rule 12(b)(6) motion, a complaint must contain facts sufficient to state a plausible claim. Labels, conclusions, and formulaic recitations of the elements do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Claims sounding in fraud must also satisfy Rule 9(b), discussed in Part II.B below. For purposes of this motion only, Ms. Kneedler applies Massachusetts substantive law because Plaintiff expressly pleads his claims under Massachusetts law, without waiving any choice-of-law argument.

## ARGUMENT

### I. The Court lacks personal jurisdiction over Ms. Kneedler.

Personal jurisdiction requires both authorization under the Massachusetts long-arm statute, Mass. Gen. Laws ch. 223A, § 3, and compliance with due process. *SCVNGR, Inc. v. Punchh, Inc.*,

478 Mass. 324, 325-26 (2017). The Court addresses the statute first because the long-arm statute is not simply coextensive with due process. *Id.* Neither requirement is satisfied here.

**A. No provision of the Massachusetts long-arm statute reaches Ms. Kneedler.**

Plaintiff will likely rely on § 3(a), which reaches a person who transacts business in Massachusetts. Mass. Gen. Laws ch. 223A, § 3(a). Even read broadly, that provision should not reach Ms. Kneedler. Plaintiff sought out Lento, not Ms. Kneedler, and Lento assigned her to his matter. Compl. ¶¶ 17, 20; Kneedler Decl. ¶ 10. She did not solicit Massachusetts business, negotiate Plaintiff's fee, or enter into a personal engagement with him. Kneedler Decl. ¶¶ 10-11. The engagement concerned a New Hampshire licensing proceeding, not Massachusetts law or a Massachusetts proceeding. Compl. ¶ 16. Ms. Kneedler had no Massachusetts office, license, property, or travel connected to the matter, and no dealings with the Massachusetts nursing board. Kneedler Decl. ¶¶ 4-7.

Sections 3(c) and 3(d) fare no better. Section 3(c) requires tortious injury caused by an act or omission in Massachusetts. Mass. Gen. Laws ch. 223A, § 3(c). Ms. Kneedler performed none of her work on Plaintiff's matter in Massachusetts. Kneedler Decl. ¶ 7. Section 3(d) reaches in-state injury caused by an act or omission outside Massachusetts only if the defendant regularly does or solicits business, engages in another persistent course of conduct, or derives substantial revenue from services rendered in Massachusetts. *Id.* § 3(d). Ms. Kneedler did none of those things. Kneedler Decl. ¶ 11. Because no provision of § 3 authorizes jurisdiction, the Court may dismiss on that ground alone.

Due process independently forecloses jurisdiction. Specific jurisdiction under the Due Process Clause requires relatedness, purposeful availment, and reasonableness. *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 59 (1st Cir. 2016). Plaintiff cannot establish the first two requirements.

### B. The claims arise from advice about a New Hampshire proceeding, not from Massachusetts conduct.

Relatedness "is not met merely because a plaintiff's cause of action arose out of the general relationship between the parties." The action instead "must directly arise out of the specific contacts between the defendant and the forum state." *Sawtelle*, 70 F.3d at 1389. The *Sawtelle* plaintiffs made the same argument Plaintiff makes here. They contended that their out-of-state lawyers "directed negligent settlement advice into New Hampshire," causing them harm there when they relied on it. The First Circuit rejected that theory. It held that the communications sent into the forum were ancillary to the lawyers' out-of-forum activities and that the plaintiffs' showing of relatedness was "tenuous at best." The gravamen of the claim was that the plaintiffs suffered at home the "effects" of negligence committed elsewhere.

The same is true here. Every act the Complaint attributes to Ms. Kneedler concerned a New Hampshire tribunal, a New Hampshire prosecutor's offer, and a New Hampshire license. Compl. ¶¶ 20-26. Her only Massachusetts contact was communicating that advice to Plaintiff where he happened to live. Compl. ¶¶ 22-23. And the injuries Plaintiff alleges flow from the October 2024 consent agreement, which Mr. Katz negotiated eight months after Ms. Kneedler left. Compl. ¶¶ 31, 41-46. Plaintiff's claims against Ms. Kneedler do not arise from anything she did in Massachusetts.

### C. Representing a Massachusetts resident remotely is not purposeful availment.

"The mere act of agreeing to represent (and then representing) an out-of-state client, without more, does not suffice to demonstrate voluntary purposeful availment of the benefits and protections of the laws of the client's home state." *Sawtelle*, 70 F.3d at 1392. In *Sawtelle*, the law firms' telephone calls and correspondence into the forum did not amount to purposeful availment.

The court also stressed that Mr. Sawtelle had initiated contact with the firm, unlike a case in which the lawyer actively solicited the client's business.

Ms. Kneedler's contacts are thinner still. Plaintiff contacted Lento, not Ms. Kneedler. Compl. ¶ 17. Lento then assigned her to the matter. Compl. ¶ 20. She did not travel to Massachusetts, maintain an office there, hold a Massachusetts license, or deal with the Massachusetts nursing board. Kneedler Decl. ¶¶ 4-7. Her involvement lasted about four months and ended on February 23, 2024. Kneedler Decl. ¶ 8. The Complaint's assertion that she "purposefully availed herself" of this District is a legal conclusion, not a fact. Compl. ¶ 23. Plaintiff alleges that Ms. Kneedler knew he lived in Massachusetts and communicated with him there. Compl. ¶¶ 22-23. That allegation does not change the analysis. *Sawtelle* already distinguishes communications that reach a forum resident from purposeful use of the forum's legal or economic system. Ms. Kneedler's undertaking remained a New Hampshire matter. Nothing in the Complaint suggests that Ms. Kneedler could reasonably have anticipated being sued in Massachusetts over advice about a New Hampshire proceeding.

**D. The reasonableness factors cannot supply missing contacts.**

The so-called gestalt factors cannot create minimum contacts that do not exist. *Sawtelle*, 70 F.3d at 1394. In any event, litigating in Massachusetts burdens a Florida domiciliary. Massachusetts has an interest in providing a forum to its residents, but that interest cannot substitute for the constitutionally required minimum contacts. New Hampshire also has a substantial regulatory interest because the legal services at issue concerned a proceeding before its nursing board. The Court should dismiss all claims against Ms. Kneedler under Rule 12(b)(2).

## II. The Complaint fails to state a claim against Ms. Kneedler.

### A. Counts II and IV do not plausibly allege that Ms. Kneedler caused any loss.

A legal-malpractice plaintiff must show that the attorney failed to exercise reasonable care and skill, that the client incurred a loss, and that the attorney's negligence proximately caused the loss. *Colucci v. Rosen, Goldberg, Slavet, Levenson & Wekstein, P.C.*, 25 Mass. App. Ct. 107, 111 (1987). The plaintiff must prove "that he probably would have obtained a better result had the attorney exercised adequate skill and care." *Fishman v. Brooks*, 396 Mass. 643, 647 (1986). At a minimum, the client must show that "he has lost a probability of success as a result of the attorney's negligence." *Colucci*, 25 Mass. App. Ct. at 112-16. At the pleading stage, Plaintiff must allege facts that make that causal chain plausible. *Iqbal*, 556 U.S. at 678. He has not.

**1. The Complaint pleads no facts showing that the November 2023 advice caused a worse outcome.** The Complaint identifies one decision Ms. Kneedler influenced. On November 7, 2023, she recommended that Plaintiff reject the prosecutor's proposal for a voluntary surrender of his license. Compl. ¶ 24. The Complaint does not allege the terms of that proposal, that the terms differed from the disposition Plaintiff ultimately accepted, or that the proposal remained available. It does not allege that accepting the proposal would have avoided the licensing and employment consequences Plaintiff now claims. Compl. ¶¶ 44-47.

The Complaint does not plead facts from which the Court can plausibly infer that accepting the November 7, 2023 proposal probably would have produced a materially better licensing or employment outcome. It does not allege the proposal's terms, collateral consequences, duration, or any other facts permitting a comparison between that proposal and the later October 2024 disposition. Plaintiff instead alleges that he understood the final resolution would be a voluntary surrender or another disposition short of revocation. Compl. ¶ 11. To the extent the October 2024 disposition operated as a revocation, as the Complaint alleges, the Complaint attributes that result

to the advice and representations Plaintiff received while Mr. Katz handled the matter. Compl. ¶¶ 31, 37, 41, 65. The Complaint pleads nothing connecting Ms. Kneedler's November 2023 recommendation to that result.

**2. The Complaint pleads no facts showing that the November 2023 recommendation fell below the professional standard of care.** Plaintiff maintained throughout the proceeding that he was a victim of the fraudulent school scheme, not a knowing participant. Compl. ¶ 17. Recommending that a client contest a disciplinary charge the client denies is not, without more, evidence of negligence. An attorney's judgment is measured against the professional standard of care, and hindsight disagreement with a strategic recommendation does not establish a breach. An attorney who acts with reasonable care and to the best of his skill and knowledge is not liable, and "[s]ome allowance must always be made for the imperfection of human judgment." *Colucci*, 25 Mass. App. Ct. at 111. The Complaint alleges no fact explaining why reasonable counsel would have recommended accepting the November 7, 2023 proposal or why the recommendation otherwise fell below the standard of care.

**3. The remaining theories target events after Ms. Kneedler left.** Count II also faults Ms. Kneedler for participating in the New Hampshire matter without authorization, for failing to ensure that Plaintiff had licensed New Hampshire counsel, and for assisting in the representation that "culminated in the consent agreement and revocation." Compl. ¶ 54. These allegations do not plausibly connect Ms. Kneedler to Plaintiff's alleged injuries.

The Complaint treats the absence of New Hampshire bar membership or pro hac vice admission as establishing unauthorized practice as a matter of law, but it identifies no statute, administrative rule, or order imposing the particular admission requirement it alleges. The rules governing adjudicative proceedings before New Hampshire's Office of Professional Licensure and

Certification expressly contemplate appearances by representatives and require disclosure of whether an attorney representative is licensed in New Hampshire. See N.H. Code Admin. R. Plc 206.09. The Complaint therefore pleads a legal conclusion, not a factual allegation, when it equates lack of New Hampshire bar membership with unauthorized representation. The local-counsel allegations also undercut the plausibility of Plaintiff's narrative. The Complaint alleges that Ms. Kneedler never affiliated with a New Hampshire attorney (Compl. ¶ 22), yet it also alleges that she found a New Hampshire attorney to associate with (Compl. ¶ 25) and names Attorney Vogelman as her "affiliated local counsel" (Compl. ¶ 27). Nor does the Complaint identify any appearance, filing, or hearing in which Ms. Kneedler participated.

Most important, every harm Plaintiff alleges flows from a disposition negotiated by successor counsel eight months after Ms. Kneedler left. Compl. ¶¶ 28-31, 41-46. Plaintiff alleges that Ms. Kneedler withdrew from the representation without informing him. Compl. ¶ 26. Even accepting that allegation, the Complaint does not explain how that omission caused the October 2024 consent agreement. Lento remained retained, Plaintiff had an affiliated local attorney, that attorney later withdrew, and Mr. Katz then assumed the representation. Compl. ¶¶ 27-30. The Complaint pleads no facts explaining how four months of early advice, or the manner of Ms. Kneedler's departure, caused a consent agreement that other lawyers negotiated and that Plaintiff signed in October 2024.

**4. Count IV alleges no distinct fiduciary misconduct.** The breach-of-fiduciary-duty count alleges that Ms. Kneedler participated in "unauthorized and deficient representation" and failed to prevent conduct that "deprived Plaintiff of informed and valid consent." Compl. ¶ 62. Count IV identifies no distinct act of disloyalty, self-dealing, conflict, dishonesty, or other fiduciary misconduct by Ms. Kneedler separate from the allegedly deficient professional representation

pleaded in Count II. To the extent Count IV rests on those same professional omissions, it suffers from the same causation deficiency. To the extent Plaintiff ties Count IV to the October 2024 consent, the Complaint pleads no act by Ms. Kneedler during Mr. Katz's later representation that plausibly caused Plaintiff's consent. The Court should dismiss both counts.

**B. Counts VI and VIII identify no statement Ms. Kneedler made.**

Rule 9(b) requires "specification of the time, place and content of an alleged false representation." *Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985). Mere allegations of fraud are too conclusory to satisfy the rule, "no matter how many times such accusations are repeated." A complaint that fails to apprise each defendant of the individual charges against that defendant does not meet the standard.

Count VI does not even allege that Ms. Kneedler made a misrepresentation. It alleges only that, "[t]o the extent" she made, endorsed, or failed to correct false representations, those representations were false. Compl. ¶ 70. A conditional allegation is not an allegation. The Count identifies no statement, date, medium, or context. The only representations the Complaint describes concern counsel's authority and the consequences of the final disposition, and the Complaint attributes them to "Defendants" as a group. Compl. ¶¶ 36-37. Grouping defendants together is particularly improper here because Ms. Kneedler's involvement ended months before Mr. Katz's representation began, and those representations concerned a disposition reached eight months after she left.

Count VI also fails to plead the required fraudulent state of mind. Massachusetts fraud requires a false representation of material fact made knowingly or recklessly for the purpose of inducing reliance, followed by reasonable reliance and damage. *See Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.*, 455 Mass. 458, 471 (2009). Count VI alleges only that Ms. Kneedler "knew

or should have known" that unspecified representations were false. Compl. ¶ 71. A "should have known" allegation describes negligence, not the knowledge or recklessness required for intentional misrepresentation. Rule 9(b) permits conditions of mind to be alleged generally, but it does not eliminate the requirement that the pleaded mental state be one that would constitute fraud. Fed. R. Civ. P. 9(b). Count VI should be dismissed.

Count VIII fails under Rule 8, without any need to apply Rule 9(b). Negligent misrepresentation requires false information supplied in the course of a business or professional transaction, a failure to exercise reasonable care in obtaining or communicating it, justifiable reliance, and resulting pecuniary loss. *Cumis*, 455 Mass. at 471-72. Count VIII alleges that Ms. Kneedler "supplied, endorsed, or failed to correct" unspecified information. Compl. ¶ 78. The only communication the Complaint specifically attributes to her is a recommendation to reject the November 7, 2023 proposal. Compl. ¶ 24. That is professional advice, not a false statement of existing fact. Plaintiff identifies no particular false information Ms. Kneedler supplied. The Complaint's generalized allegation that "Defendants" discussed the ultimate disposition also cannot be reconciled with its own chronology, which places Ms. Kneedler's departure before Mr. Katz took over and many months before the October 2024 consent agreement. Compl. ¶¶ 26-31, 36-37. Count VIII should be dismissed.

### C. Count IX alleges aiding and abetting conduct that began after Ms. Kneedler left.

Aiding and abetting requires an underlying breach, the defendant's actual knowledge of the breach, and the defendant's active participation or substantial assistance. *Arcidi v. Nat'l Ass'n of Gov't Emps., Inc.*, 447 Mass. 616, 623-24 (2006). Alleging facts showing that a defendant should have recognized the wrongdoing does not satisfy the actual-knowledge requirement. *See In re TelexFree Sec. Litig.*, 357 F. Supp. 3d 70, 77 (D. Mass. 2019).

Count IX alleges that Ms. Kneedler aided Mr. Katz's torts. Compl. ¶ 82. But Plaintiff's own pleading establishes that Mr. Katz did not enter the case until May 22 and 23, 2024. Compl. ¶¶ 29-30. By then, Ms. Kneedler had left Lento. Compl. ¶ 26. The Complaint alleges no communication between Ms. Kneedler and Mr. Katz and no act she took while he represented Plaintiff. She could not have known of, or substantially assisted, a representation that had not yet begun.

The Count's remaining allegations do not cure the problem. The allegation that Ms. Kneedler "knew or should have known" of Mr. Katz's lack of authorization does not plead actual knowledge. Compl. ¶ 83. The allegation that she failed "to ensure that Plaintiff had ongoing representation" at the time of her withdrawal restates the malpractice theory in Count II. Compl. ¶ 84. That allegation does not plead that Ms. Kneedler knowingly assisted a representation that had not yet begun. Count IX should be dismissed.

**D. Count XII seeks direct damages, not indemnity.**

Massachusetts common-law indemnity is available to a party held derivatively or vicariously liable for another's wrongful act. *Decker v. Black & Decker Mfg. Co.*, 389 Mass. 35, 40-41 (1983). Count XII alleges no judgment, settlement, or other liability that a third party imposed on Plaintiff. It seeks to recover Plaintiff's own losses from the New Hampshire discipline. Compl. at 15 (Count XII). Those are the same direct damages Plaintiff seeks in his tort counts. Count XII should be dismissed.

**CONCLUSION**

Ms. Kneedler advised Plaintiff for about four months, recommended that he contest a charge he denied, and left eight months before the disposition he now challenges. Her only connection to Massachusetts is that Plaintiff lived there. The Court should dismiss all claims

against her under Rule 12(b)(2). In the alternative, the Court should dismiss Counts II, IV, VI, VIII, IX, and XII, or any of them, under Rule 12(b)(6).

Respectfully submitted,

Kristi Kneedler

/s/ Kristi Kay Kneedler
KRISTI KAY KNEEDLER (Pro se)
Address: 174 Water Color Way, Suite 103, #175,
Santa Rosa Beach, FL 32459
Telephone: (850) 353-3254
Email: kkneedler@mwlawfirm.com

Dated: October 7, 2026