UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

HARRISON NGEAH MISSIBI,
*Plaintiff*,

v.

LENTO LAW GROUP, P.C.; *et al.*,
*Defendants*.

Civil Action No. 1:26-cv-13498-ADB

**OPPOSITION OF THE MOTION OF THE PLAINTIFF, HARRISON NGEAH MISSIBI, TO THE MOTIONS TO DISMISS OF LAWRENCE KATZ [ECF 9] AND KRISTI KAY KNEEDLER [ECF 15]**

NOW COMES the Plaintiff, Harison Ngeah Missibi ("Mr. Missibi" or "Plaintiff"), and respectfully offers this Opposition to the Motions of the Defendants, Lawrence Katz ("Atty. Katz") and Kristi Kay Kneedler ("Atty. Kneedler," collectively the "Individual Defendants"). As the Individual Defendants have raised several overlapping arguments in support of dismissal, in the interest of economy and brevity, Plaintiff provides this single Opposition to both Motions as well as the arguments offered in the respective supporting Memoranda of Law.

As discussed below, this Court has personal jurisdiction over each of the Defendants based on their purposeful availment of the forum. They chose to take on representation of a Massachusetts citizen but failed to conduct sufficient investigation into the facts applicable to his New Hampshire administrative proceeding. This failure, paired with the fact that Plaintiff's injury is felt in Massachusetts, is sufficient to establish the jurisdiction of this forum. As to Defendants' substantive challenges to the Counts of the Complaint, they are unavailing at the 12(b)(6) stage.

In the alternative, should this Court conclude it lacks jurisdiction, then the appropriate alternative would be transfer to the United States District Court for the District of New Hampshire pursuant to 28 U.S.C. §§ 1406(a) and 1631 rather than dismissal.

## I. BACKGROUND

On March 3, 2023, the New Hampshire Board of Nursing (the "Board") opened a complaint into Mr. Missibi, a nurse residing in the Commonwealth, based on the fact that this application to practice in New Hampshire contained documents from the Quisqueya School of Nursing, which was discovered to be participating in a fraudulent diploma and transcript scheme. ECF 1 at 3-4 at ¶¶ 15, 16. As Mr. Missibi had legitimate credentials in his home country of Cameroon, he sought to contest the Board proceedings, contacting Lento Law Group, P.C. ("Lento Law Group"), a self-styled "nationwide, full-service law firm" through their website. *Id.* at 4, ¶ 17. Lento Law Group then reached out to Mr. Missibi through its law support team, who solicited a $350 fee to conduct an initial interview to obtain further information. *Id.* at ¶ 18. Rather than proceeding with the interview, Lento Law Group assigned Atty. Kneedler, who lacked a New Hampshire license, to represent him. *Id.* at ¶ 20. On November 7, 2023, the Board offered Mr. Missibi the chance to voluntarily surrender his license. *Id.* at 5, ¶ 24. Despite lacking any license to practice in New Hampshire, having failed to conduct meaningful investigation into Mr. Missibi's history, and operating without the assistance of local counsel to inform her legal advice, Atty. Kneedler recommended that he reject the offer. *Ibid.* Mr. Missibi rejected the offer based on her advice. *Ibid.* She informed Mr. Missibi that she would continue representing him and would begin associating with local counsel, but instead, she withdrew from his representation without informing him. *Id.* at 5-6 at ¶¶ 26, 27.

Lento Law Group allowed Mr. Missibi to remain unknowingly unrepresented by counsel for several months before it assigned Atty. Katz, also unlicensed in New Hampshire. *Id.* at 6, ¶¶ 29, 31, 32. Atty. Katz thereafter negotiated a settlement with the Board which resulted in revocation, rather than surrender, due to his lack knowledge of New Hampshire law and failure to associate

with local counsel. *Id.* at 7-8 at ¶¶ 37, 40, 41, 42, 43. As a direct result of having his license revoked, rather than surrendering it, Mr. Missibi has lost opportunities for employment as a nurse and has been deprived of the ability to practice his profession in other jurisdictions, resulting in ongoing financial loss, reputational injury, legal fees, and emotional distress. *Id.* at 8-9, ¶¶ 46, 47.

## II. STANDARD OF REVIEW

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the United States Supreme Court announced in *Bell Atlantic Corporation v. Twomby,* 550 U.S. 544, 555 (2007), the pleading standard Rule 8 announces does not require "detailed factual allegations," but does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). The plausibility standard is not a "probability requirement," and a complaint survives scrutiny "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.*

In resolving a motion to dismiss, the reviewing court must "accept as true all well-pleaded facts set forth in the complaint and draw all reasonable inferences therefrom in the pleader's favor." *O'Brien v. Deutsche Bank National Trust Co.,* 948 F.3d 31, 35 (1 st Cir. 2020) (quoting *Young v. Wells Fargo Bank, N.A.,* 717 F.3d 224, 231 (1 st Cir. 2013)) (internal quotation marks omitted). "If the plaintiff adequately pleads his claim for relief, he 'receives the benefit of imagination, so long as the hypotheses are consistent with the complaint.'" *Dagi v. Delta Airlines, Inc.,* 961 F.3d 22, 27 (1 st Cir. 2020) (quoting *Twombly,* 550 U.S. at 563).

"Evaluating the plausibility of a complaint is a two-step process." *Jane Doe No. 1 v. Backpage.com,* LLC, 817 F.3d 12, 24 (1 st Cir. 2016). "First, the court must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited). Second, the court must determine whether the remaining facts allow it to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.* (internal quotation marks and citations omitted). "In determining whether a complaint crosses the plausibility threshold, 'the reviewing court [must] draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal,* 556 U.S. at 679). Additionally, "whether the facts alleged are sufficient to state a plausible claim against a particular defendant is 'context specific." *Sanchez v. Pereira-Castillo,* 590 F.3d 31, 48 (1 st Cir. 2009) (quoting *Iqbal,* 556 U.S. at 679). As part of this analysis "the reviewing court must draw on its judicial experience and common sense. This context-specific inquiry does not demand a high degree of factual specificity." *Garcia-Catalan v. United States*, 734 F.3d 100, 103 (1st Cir. 2013) (internal brackets, quotation marks, and citations omitted).

A motion to dismiss under 12(6)(6) "generally provides no occasion upon which to consider documents other than the complaint." *Doe v. Pawtucket School Department,* 969 F.3d 1, 8 (1st Cir. 2020). As a result, the Court's review is limited to the "facts and documents that are part of the complaint or incorporated into the complaint; if matters outside the pleadings are considered, the motion must be decided under the more stringent standards applicable to a Rule 56 motion for summary judgment." *Trans-Spec Truck Service, Inc. v. Caterpillar Inc.,* 524 F.3d 315, 321 (1 st Cir. 2008) (citing *Carita Hotel Ltd. P'ship v. Ponce Fed. Bank, F.S.B.,* 958 F.2d 15, 18 (1st Cir. 1992)). An exception to this rule is where personal jurisdiction is contested, at which time it may "add to the mix facts put forward by the defendants, to the extent that they are

uncontradicted." *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir.1998). Even in such cases, however, the Court must "take specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim." *Ibid.*

## III. ARGUMENT

The Individual Defendants raise two categories of argument to challenge Plaintiff's Complaint. First, they dispute personal jurisdiction, asserting they have not resided in Massachusetts, been licensed in Massachusetts, or maintained an office in Massachusetts. These protestations are immaterial, however, where the Individual Defendants' firm affirmatively solicited Mr. Missibi's business in Massachusetts, purposefully availed themselves of Massachusetts by engaging in remote legal practice here, and in so doing engaged in tortious conduct in the Commonwealth which caused the injury at issue. In the event that this Court concludes Plaintiff has not met his burden of establishing jurisdiction, however, Plaintiff reflects that the appropriate remedy is transfer to the United States District Court for the District of New Hampshire, rather than dismissal.

As to the Individual Defendants' challenges to the substance of the pled Counts, as discussed below, these arguments are either unavailing, premature, or not legally cognizable.

### A. The Massachusetts Long-Arm Statute Permits this Court to Exercise Personal Jurisdiction Over the Defendants, and Doing So in the Instant Circumstances Comports with Due Process.

Both of the Individual Defendants maintain that this Court lacks personal jurisdiction, asserting their conduct directed to Massachusetts is neither sufficiently related to the allegations in question nor did they purposefully avail themselves of the forum. The Massachusetts Long-Arm Statute, M.G.L. c. 233A, § 3, provides, as relevant here, that a Court in the Commonwealth may exercise personal jurisdiction over a person "who acts directly or by an agent" as to establish a

cause of action arising from transacting business, or causing tortious injury by an act or omission within the Commonwealth, as well as where he causes "tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct" within Massachusetts.

It is well established in diversity cases that "the district court's personal jurisdiction over a nonresident defendant is governed by the forum's long-arm statute." *Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Int'l, Inc.,* 982 F.2d 686, 690 (1st Cir.1993) (quoting *Pizarro v. Hoteles Concorde Int'l, C.A.,* 907 F.2d 1256, 1258 (1st Cir.1990)). Here, the "Massachusetts long-arm statute functions as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States." *Tatro v. Manor Care, Inc.*, 416 Mass. 763, 771, 625 N.E.2d 549, 553 (1994) (internal quotation marks and citations omitted). The only question then is whether the Court's exercise of jurisdiction in the instant circumstances falls within the bounds of due process. Due to the fact that each of the Individual Defendants worked for a law firm which affirmatively solicited Mr. Missibi's business in Massachusetts, elected to represent a Massachusetts resident, and directed legal counsel to Massachusetts, the requisite minimum contacts are satisfied, and the Individual Defendants' Motions should be denied.

The Due Process Clause imposes three requirements for exercising specific jurisdiction over out-of-forum defendants. First, the plaintiff's claim must arise from or relate to the defendant's activities in the forum. *Scottsdale Capital Advisors Corp. v. The Deal, LLC*, 887 F.3d 17, 20 (1st Cir. 2018). Second, the defendant's forum-state contacts must "represent a purposeful availment of the privilege of conducting activities in that state." *Ibid.* Third, the exercise of specific jurisdiction in the forum must be reasonable under the circumstances. *Ibid.*

Relatedness is a "flexible, relaxed standard." *Pritzker v. Yari*, 42 F.3d 53, 61 (1994). It turns on the "nexus between the defendant's contacts and the plaintiff's cause of action." *Ticketmaster-N.Y., Inc. v. Alioto* ("*Ticketmaster*"), 26 F.3d 201, 206 (1st Cir. 1994). Put another way, it requires that the alleged injury was at least to some degree caused by the tortfeasors conduct in the relevant forum. *Ibid.* Here, the negligent legal representation had its origin in Massachusetts, from the initial solicitation through the revocation of Mr. Missibi's license. The Defendants failed to adequately develop the defense necessary to resolve Plaintiff's Board complaint without a license revocation. ECF 1 at 4, 5, 6, 7 at ¶¶ 19, 23 31, 38. As a consequence, they committed legal malpractice in the New Hampshire proceeding, causing injury in Massachusetts. *Id.* at 7, ¶ 33.

"[T]he two cornerstones of purposeful availment are 'voluntariness' and 'foreseeability.'" *PREP Tours, Inc. v. American Youth Soccer Org.*, 913 F.3d 11, 19-20 (1st Cir. 2019) (quoting *Ticketmaster*, 26 F.3d at 206. There is no requirement that a defendant maintain offices or regularly transact business in the forum state in order for it to have purposefully availed itself of the forum, instead "even a single act can support jurisdiction." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 & n.18 (1985). By taking the initial step of affirmatively soliciting payment for conducting an interview with a potential client who they knew resided in Massachusetts and was in Massachusetts at the time of their representation, then beginning representation without conducting any initial interview Lento Law Group and Defendant Kneedler had "fair warning" that their conduct may subject them to Massachusetts jurisdiction. *See Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring in judgment) ("contact with the State, though minimal, gives rise to predictable risk"); *see also Burger King Corp.*, 471 U.S. at 473-74 ("where individuals 'purposefully derive benefit' from their interstate activities, it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such

activities") (citation omitted). While the legal proceedings at issue were in New Hampshire, the underlying facts of that proceeding were highly individualized, and the Individual Defendants' investigation necessarily needed to be focused on Mr. Missibi in Massachusetts, making it foreseeable that deficient defense of the Board proceeding could give rise to liability in this forum. Moreover, where, as here, "a defendant's contacts primarily consist of remote communications, we necessarily focus on the target of the communications and the effects in that forum." *See PREP Tours, Inc.*, 913 F.3d at 36-37 (Lipez, J., dissenting); *see also* Calder v. Jones, 465 U.S. 783, 789 (1984) (holding that jurisdiction in California was proper when the effects of defendants' intentional conduct in Florida were felt, and caused a tortious injury, in California).

The final requirement, dubbed by Judge Selya the "Gestalt Factors" of personal jurisdiction, turn on whether the exercise of personal jurisdiction in a given instance "would, holistically viewed, offend traditional notions of 'fair play and substantial justice.'" *Pritzker*, 42 F.3d at 63-64 (quoting *Burger King Corp.*, 471 U.S. at 476). Here, these factors do not deprive Massachusetts of personal jurisdiction. First and foremost, litigants can electronically submit filings to a court and video-conference from anywhere in the country, reducing the need to travel. AS there is no "special or unusual burden" apparent here, Defendants cannot assert distance as a barrier. *See Pritzker*, 42 F.3d at 64. As to the forum state's interest, Massachusetts plainly has an interest in protecting its residents from alien tortfeasors who proactively target its citizens with offers of unlicensed legal services and, as a result of their unauthorized practice of law, cause injury to them. *See McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957) (noting a state's "manifest interest in providing effective means of redress for its residents" when they are injured by an out-of-state party). Moreover, the First Circuit has repeatedly held that a plaintiff's choice of forum must be afforded a degree of deference. *See Ticketmaster*, 26 F.3d at 211.

Both Atty. Katz and Atty. Kneedler rely heavily on *Sawtelle v. Farrell*, 70 F.3d 1381 (1st Cir. 1995), a comparable but distinguishable case. In *Sawtelle*, the plaintiffs were New Hampshire based residents whose son had died in a midair collision over the New Hampshire-Vermont Border. *Id.* at 1386. The other craft involved in the collision was registered in Florida. *Ibid.* The plaintiffs contacted a New Hampshire attorney who referred them to a California-based firm specializing in aircraft litigation. *Ibid.* The California firm then transferred the case to a Virginia-based affiliate, who assigned its attorney, Farrell, to the plaintiffs' case. *Ibid.* Farrell was not licensed to practice in New Hampshire, but he communicated with them multiple times throughout the representation. *Ibid.* He advised the plaintiffs that Florida was the "most advantageous" forum for their claim. *Ibid.* Farrell engaged a Florida firm to act as local counsel and filed suit in Broward County, Florida. *Ibid.* A settlement of $155,000 was offered, Farrell recommended the plaintiffs accept, and the case settled. *Id.* at 1386-87. The plaintiffs later learned that the estate of the other passenger in their son's crash had received a settlement of $500,000, and they proceeded to file a legal malpractice action in the United States District Court for the District of New Hampshire against Farrell, his firm, and the local counsel in Florida, asserting that they had failed to take adequate discovery, failed to retain experts to properly evaluate the case, and gave them legally negligent advice to settle the case, causing economic loss in New Hampshire. *Id.* at 1387. The District Court concluded that it lacked personal jurisdiction over the defendants and dismissed the case. The plaintiffs duly appealed. *Ibid.*

On review, the First Circuit concluded that the scope of the New Hampshire long-arm statute—like the Massachusetts long-arm statute—was functionally coterminous with the outer limits of due process. *Id.* at 1388; *compare Tatro*, 625 N.E.2d at 553. Accordingly, the *Sawtelle* Court's analysis focused on the three prongs of due process inquiry. 70 F.3d at 1388-94. In

addressing the relatedness element, the First Circuit noted that "[o]f the limited contacts between the defendants and New Hampshire during their legal representation, few are relevant to the Sawtelles' claim of legal malpractice" and the allegedly negligent conduct of the defendants occurred "in Virginia and Florida, but not in New Hampshire. It was the defendants' investigation, in Florida and Virginia, which informed their judgment about the amount and propriety of the proposed settlement." *Id.* at 1389-90. The *Sawtelle* Court's conclusion was lukewarm, finding that while "[i]t may be true that the defendants' alleged malpractice was not consummated until they communicated their misconceived advice to plaintiffs in New Hampshire," the showing of relatedness was "tenuous as best." *Id.* at 1390-91. More damningly, the First Circuit's concluded that the defendants had not purposefully availed themselves of the forum, concluding that while the firms had styled themselves as national firms doing business throughout the United States, their involvement had come at the request of other law firms, and they had not purposefully and affirmatively directed their conduct to New Hampshire. *Id.* at 1393. In light of these conclusions, the First Circuit concluded that while "the exercise of jurisdiction may be proper when a borderline showing of relatedness and purposeful availment is supported by an especially solid showing of reasonableness, our 'gestalt' analysis in the instant case fails to reveal any such fortification." *Id.* at 1396 (citation omitted).

There are key distinctions between the facts underpinning the *Sawtelle* Court's findings and the negligent conduct alleged in the instant case. In *Sawtelle*, the facts—the negligent investigation and advice regarding an expected settlement valuation—occurred in Florida and Virgina, while the legal communications to New Hampshire, standing alone, were "tenuous." *Id.* at 1386-87, 1391. Here, the key facts occurred primarily in Massachusetts and New Hampshire, rather than New Jersey, where the Individual Defendants' firm was located. A reasonable inference

drawable from the Complaint is that the Individual Defendants were negligent not only because they failed to retain experts or merely because they gave him poor settlement advice, but also because they failed to conduct a sufficient investigation in Mr. Missibi's personal history, including his history as a victim of the fraud committed by the Quisqueya School of Nursing, his personal employment history, and the impact of that history on his administrative proceedings. *See* ECF 1 at 3, 4, 5, 8 at ¶¶ 15, 17, 23, 44. The nidus of those facts was Mr. Missibi's person, and their failure to investigate further in Massachusetts were acts which directly caused Plaintiff's injury. *See Ticketmaster*, 26 F.3d at 206-07 (observing that "the element of causation" is central to relatedness analysis). As the *Sawtelle* Court observed, it was the defendants' deficient investigation which "informed their judgment" in giving the purportedly negligent settlement advice, and the action should have been brought in the forum where that deficient investigation occurred. 70 F.3d at 1389-90. Here, the investigation was, or should have been, conducted in Massachusetts, and accordingly the relatedness requirement is met. *See ibid.*

Pivotally, the *Sawtelle* Court's analysis of purposeful availment turned on the fact that, despite the defendant law firms "efforts to cultivate their images as 'national' firms," they "became involved in the subject representation not as the result of affirmative efforts to promote business in New Hampshire, but only after being requested by the Virginia firm to commence litigation in Florida." *Id.* at 1393. Unlike a law firm's self-stylings as a 'national firm' on a website in 1995, Lento Law Group's website not only directly solicited Massachusetts business but provided means for him to contact them. ECF 1 at 4, ¶ 17. An initial inquiry led Lento Law Group's "law support team" to affirmatively reach out to him, in Massachusetts, to solicit a $350 "consultation fee" just to conduct an initial interview with him to obtain information. *Id.* at ¶ 18. This is a stark distinction from the facts in *Sawtelle*; Lento Law Group and the Individual Defendants were not referred to

Mr. Missibi by another firm, rather they actively solicited his business online, in Massachusetts, rendering them subject to personal jurisdiction. *See Stokinger v. Armslist, LLC*, 166 F.4th 229, 240 (1st Cir. 2026) (jurisdiction properly found in New Hampshire where evidence "supportably shows that [defendant] knew that 'it was intentionally operating its website' for the purpose of facilitating firearm sales in New Hampshire)" (emphasis in original) (quoting *Rosenthal v. Bloomingdales.com, LLC*, 101 F.4th 90, 97 (1st Cir. 2024). These are far from the 'tenuous' connections which underpinned the claim of jurisdiction in *Sawtelle*.

In *Stokinger*, a case decided earlier this year, the First Circuit addressed whether the District of New Hampshire could properly exercise jurisdiction over a firearms retailer based on online commerce directed to the forum state. 166 F.4th at 231-32. Concluding that operating the website was sufficient to confer jurisdiction, the First Circuit noted that the defendant "was not merely a passive bystander to the website being so used. . . It had 'voluntarily' taken an affirmative step to increase the likelihood that a firearm being offered for sale in New Hampshire would be purchased in that same state." *Id.* at 240. Like the website in *Stokinger*, Lento Law Group's website was not a passive advertising tool, it was a means of initiating communication for purposes of soliciting business in other states, and a simple inquiry by Mr. Missibi caused Lento Law Group to affirmatively contact him and solicit payment to establish legal representation. ECF 1 at 4, ¶¶ 17, 18. This "affirmative step" is sufficient to establish that the Defendants in this case "deliberately targeted [their] behavior" to the forum state of Massachusetts, establishing a *prima facie* case for personal jurisdiction. *See Stokinger*, 166 F.4th at 241.

Atty. Kneedler's representation that during the relevant period she "did not regularly do or solicit business in Massachusetts," *see* ECF 16.1 at 2, is misleading. Plaintiff does not assert that Atty. Kneedler is so at home in the Commonwealth such that this Court could exercise general

jurisdiction over her, rather, the Complaint fairly alleges that by relying on her firm's website to solicit potential clients in Massachusetts and thereafter knowingly and voluntarily engaging in the representation of a Massachusetts citizen, Atty. Kneedler should have reasonable foreseen that this contact with the state could someday cause her to be hailed into the forum to answer for any conduct. *See Shaffer*, 433 U.S. at 218. Regardless of whether Atty. Kneedler personally solicited business from Commonwealth residents like Mr. Missibi, her employer, Lento Law, most assuredly did so on her behalf, not only generally, but specifically as to Mr. Missibi. ECF 1 at 4, ¶¶ 17, 18. As asserted in Plaintiff's Complaint, Lento Law not only held itself out as a "nationwide, full-service law firm," but affirmatively solicited their 'consultation fee,' took Mr. Missibi's case without reservation, and thereafter and assigned Atty. Kneedler as Mr. Missibi's sole counsel. *Ibid.* Atty. Kneedler's lack of professional licensure in the Commonwealth and in New Hampshire did not prevent her from voluntarily taking on Mr. Missibi's case and knowingly directing legal advice and strategic recommendations into the forum state. The reasonable inference which this Court must draw from the pled—indeed uncontested—facts is that Atty. Kneedler was an employee of a law firm which not only advertised nationally, but purposefully availed itself of the privilege of soliciting business in Massachusetts. Atty. Kneedler, and later Atty. Katz, elected to engage in the practice of law here. Their transaction of business in Massachusetts is sufficient to impose jurisdiction under the long-arm statute. *See* c. 233A, § 3(a), (d); *Stokinger*, 166 F.4th at 240 (exercise of personal jurisdiction proper where defendant "had reason to know not merely that its website was capable of being used to facilitate firearm sales in New Hampshire but that it was, in fact, being so used"). Atty. Katz, for his part, acknowledges representing Mr. Missibi in Massachusetts in a second, subsequent licensing action subsequent to the New Hampshire surrender, demonstrating ongoing contacts with the forum state. *See* ECF 9.1 at 1-2, ¶ 9.

**B. In the Alternative, this Court Should Transfer this Action to the District of New Hampshire Pursuant to 28 U.S.C. §§ 1406(a) and 1631 for Further Proceedings.**

Where a district court finds that it lacks personal jurisdiction over a defendant, it must decide whether to dismiss the action or instead transfer it. The controlling statutes are 28 U.S.C § 1406(a), which provides that "the district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought" and § 1631, which provides that where a

> court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court (or, for cases within the jurisdiction of the United States Tax Court, to that court) in which the action or appeal could have been brought at the time it was filed or noticed.

A court has the power to transfer a case to an appropriate forum even if it lacks personal jurisdiction over the defendants. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 465–66 (1962). While the decision between transfer and dismissal when it concludes it lacks personal jurisdiction over a defendant in a diversity action is within the court's discretion, it has been said that "transfer is generally preferable to dismissal." *See Cormier v. Fisher*, 404 F. Supp. 2d 357, 363 (D.Me. 2005) (collecting cases). Indeed, the First Circuit has stated that there is a "a rebuttable presumption in favor of the transfer alternative." *Subsalve USA Corp. v. Watson Mfg., Inc.*, 462 F.3d 41, 43 (1st Cir. 2006). Seemingly acknowledging this, Atty. Katz seeks in the alternative for this matter to be transferred to the United States District Court for the District of New Jersey, citing convenience to himself and Lento Law Group and the fact that substantial part of the activity occurred there. ECF 9 at 8-9.

If, as the Individual Defendants suggest, this Court concludes that it does not have personal jurisdiction over the Individual Defendants, then the jurisdiction for transfer is undoubtedly New Hampshire. As Atty. Kneedler points out, this case "concerned a New Hampshire tribunal, a New

Hampshire prosecutor's offer, and a New Hampshire license." ECF 16 at 5; *compare* ECF 9 at 9 (Atty. Katz acknowledges that "the underlying agency activity occurred in New Hampshire"). While Lento Law Group and Atty. Katz are subject to personal jurisdiction in New Jersey, transfer to that forum could continue to leave the question of personal jurisdiction unresolved, as Atty. Kneedler was domiciled in Florida during the relevant time, and it is unclear the extent of her connection to New Jersey beyond working for a New Jersey-based firm. *See* ECF 16.1 at 1-2 at ¶¶ 2, 3, 10. Certainly, all Defendants purposefully availed themselves of New Hampshire by representing a client in a Board matter in that state, and given that the proceedings in that state were the most proximate cause of Mr. Missibi's injury, those contacts are doubtlessly related for purposes of establishing personal jurisdiction. *See Ticketmaster*, 26 F.3d at 206.

Turning to the gestalt factors, it is clear New Hampshire is preferable to New Jersey. To begin, Plaintiff's interests would be far better served by transfer to New Hampshire. The undersigned counsel is admitted to practice in the United States District Court for the District of New Hampshire, and thus representation could continue uninterrupted. While transfer to New Jersey would be convenient for Lento Law Group and Atty. Katz, it would be no more convenient for Atty. Kneedler than New Hampshire, and in any event, "litigants can electronically submit filings to a court and video-conference from anywhere in the country, reducing the need" and thus the burden, "to travel." *PREP Tours, Inc.*, 913 F.3d at 37 (Lipez, J., dissenting). Moreover, New Hampshire arguably has the greatest interest in hearing this matter, as it was legal representation in its administrative system which gives rise to this action.

### C. The Individual Defendants' Substantive Factual Challenges to the Pled Causes of Action are Unavailing.

The Individual Defendants' attempts to dispute the facts alleged in the complaint are unavailing at this stage of the proceedings. The standard for assessing a motion to dismiss is an

exceedingly liberal one, where all well-pleaded facts are read as true and all reasonable inferences and construed with the benefit of the Court's experience (as well as a little "imagination"). *Dagi,* 961 F.3d at 27. While the Individual Defendants' affidavits can be fairly considered for purposes of hearing a challenge to jurisdiction, *see Baskin–Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 34 (1st Cir. 2016), Atty. Kneedler's attempts to engineer disputes of fact to defeat a well-pleaded complaint by use of an affidavit are improper. *See* ECF 16.1 at 1-2.

**i. Professional Liability**

Both of the Individual Defendants assert that the Complaint fails to adequately allege causation, asserting it does not adequately allege that, but for their negligent recommendations, Mr. Missibi would have had a different result. *See* ECF 9 at 10; ECF 16 at 7-8. Rather than supporting their argument, the Individual Defendants' failure to appreciate the distinction between revocation and surrender only demonstrates that they still do not appreciate the magnitude of the harm they caused, as the Complaint plainly premises liability on the Defendants' failure to

> adequately explain to Plaintiff the difference between revocation and voluntary surrender, the reporting consequences of revocation, the likely effect of revocation on future licensing applications, the likely effect of revocation on professional background checks, and the likelihood that a revocation would operate as a continuing bar to employment opportunities.

ECF 1 at 8, ¶ 43.

Atty. Kneedler recommended that Mr. Missibi reject an offer to voluntarily surrender his license. *Id.* at 5, ¶ 24. Atty. Katz negotiated an outcome which led to a revocation rather than a voluntary surrender. *Id.* at 8, ¶ 41. Revocation has materially impaired Mr. Missibi's ability to practice his profession. *Id.* at ¶¶ 44, 45. If this Court looks to ¶ 43, the plain inference of the Complaint is that, had Mr. Missibi voluntarily surrendered his license, either when it was offered during Atty. Kneedler's representation or subsequently during Atty. Katz's representation, there would be a "difference" in his reporting consequences, licensing applications, background checks,

and most importantly, his ability to practice his profession in the future. *See id.* at 8, ¶¶ 41, 43, 44, 45. It is enough that Mr. Missibi has alleged that, but for the failure of the Individual Defendants to be sufficiently familiar with the consequences of the Board proceedings, Mr. Missibi would not have suffered a revocation of his license. This is not a speculative claim of potential damages; the Complaint clearly alleges that the revocation is materially impairing his ability to practice and find employment, not only in New Hampshire, but elsewhere, and that but for that revocation, he would already have obtained other employment and licensure in Massachusetts. *Id.* at 8, ¶¶ 45, 46. These damages are well and explicitly pled and accordingly must be accepted at face value. *See Iqbal,* 556 U.S. at 679.

Atty. Kneedler's attempt to require expert support for the legal standard of care is simply not cognizable at the motion to dismiss stage. *See* ECF 16 at 8. She is correct that an attorney's judgement is measured against the standards of her profession, but plainly the Complaint alleges that her advice that Mr. Missibi reject the settlement offer and her subsequent negligent participation in the Board proceeding deviated from the standard of care. ECF 1 at 10, ¶ 54. Massachusetts does not require an expert affidavit be filed alongside a complaint in a legal malpractice action, and Atty. Kneedler has offered no explanation as to why the Court should consider granting judgment based on the standard of care during the Rule 12 stage. While it is true that "[s]ome allowance must always be made for imperfection," that is not a basis for a motion to dismiss. *See* ECF 16 at 8 (quoting *Colucci v. Rosen, Goldberg, Slavet, Levenson & Wekstein, P.C.*, 25 Mass. App. Ct. 107, 111 (1987)); *contra Colucci*, 25 Mass. App. Ct. at 111 (entering judgment notwithstanding the verdict where plaintiff had no expert testimony whatsoever to establish the standard of care). Atty. Kneedler's argument sounds in summary judgment, but she has not demonstrated a lack of disputed material fact as to the standard of care.

**ii. Breach of Fiduciary Duty**

Atty. Kneedler challenges the common-law breach of fiduciary duty claims. ECF 16 at 9-10. To state a claim for breach of fiduciary duty under Massachusetts law, a plaintiff must establish "(1) the existence of a duty of a fiduciary nature, based upon the relationship of the parties, (2) breach of that duty, and (3) a causal relationship between that breach and some resulting harm to the plaintiff." *Amorim Holding Financeria v. C.P. Baker*, 53 F. Supp. 3d 279, 295 (D. Mass. 2014) (quoting *Hanover Ins. v. Sutton*, 46 Mass. App. Ct. 153, 705 N.E.2d 279, 288–89 (1999)). Atty. Kneedler asserts "the same causation deficiency" as raised in her challenge to the legal malpractice claims. ECF 16 at 9-10. The challenge to the breach of fiduciary duty claim fails for the same reason as to her challenge to negligence; Mr. Missibi has pled that the revocation of his license has caused him present, ongoing harm in a way that would have been avoided by voluntarily surrendering his license. *See* ECF 1 at 8, ¶¶ 41, 43, 44, 45. Those damages fall squarely on Atty. Kneedler's shoulders where she recommended, without consultation with a New Hampshire attorney or educating herself as to the consequences of the outcome, that he reject an offer of voluntary surrender. *See* ECF 1 at 5, ¶¶ 23, 24.

**iii. Fraud and Negligent Misrepresentation**

Both Individual Defendants maintain that the fraud and negligent misrepresentation counts are deficient, asserting they lack sufficient specifically pled facts. *See* ECF 9 at 11 (citing *N. Am. Cath. Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 13 (1st Cir. 2009) and *Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.* ("*Cumis*"), 455 Mass. 458, 471-72, 918 N.E.2d 36 (2009)); ECF 16 at 10-11 (citing *Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985) and *Cumis*, 455 Mass. at 471-72).

Contrary to the Individual Defendants' protestations, the Complaint adequately pleads that both of the Individual Defendants made "false representation of material fact, with knowledge of its falsity," and that Mr. Missibi "reasonably relied on the representation as true, and that they acted upon it to their damage." *See Cumins*, 918 N.E.2d at 47. First, Atty. Kneedler informed Mr. Missibi that she had found local counsel with whom to associate and that she would continue representing him. ECF 1 at 5, ¶ 25. She then withdrew from representing him, along with local counsel, leading him unrepresented and vulnerable. *Id.* at 5, 6 at ¶¶ 26, 27. As a direct consequence of her fraudulent statement that she would continue representing him along with a New Hampshire attorney, Mr. Missibi had no knowledge that he was unrepresented and did not retain independent local counsel, and as a consequence of acting upon her false representation, he suffered a revocation. *Id.* at 6, 12 at ¶¶ 27, 28, 29, 70, 71, 72. As to Atty. Katz, the Complaint alleges that he represented to Mr. Missibi that he was "authorized to act as his counsel in the New Hampshire proceeding," *id.* at 7, ¶ 36, a knowingly inaccurate statement, as the presiding officer and prosecutor raised the issue during the proceeding. *Id.* at ¶ 34.

Even assuming, *arguendo*, that Plaintiff cannot establish, down the road after the benefit of discovery, that these misrepresentations were made with the intent to deceive, plainly they still meet the lower standard for negligent misrepresentation, which requires only that:

> in the course of their business, profession or employment… [defendants] supplied false information for the guidance of others in their business transactions without exercising reasonable care or competence in obtaining or communicating the information, that those others justifiably relied on the information, and that they suffered pecuniary loss caused by their justifiable reliance upon the information.

*Cumins*, 455 Mass. at 47-48 (quoting *Nycal Corp. v. KPMG Peat Marwick LLP*, 426 Mass. 491, 496, 688 N.E.2d 1368 (1998)) (internal brackets and quotation marks omitted). Notably, these torts are independent causes of action, not duplicative with legal malpractice, and Atty. Katz has identified no legal basis to conclude that they should be dismissed as such. *See* ECF 9 at 11. The

Counts allege that the Individual Defendants made misrepresentations with the intent to defraud. For purposes of resolving this motion to dismiss, both the facts and reasonable inference must be read in Plaintiff's favor, and plainly it is a reasonable inference that these Individual Defendants made these false statements for the purposes of retaining Mr. Missibi as a client of Lento Law Group, preventing him from finding independent local counsel.

**iv. Aiding and Abetting and the c. 93A Claims**

Atty. Kneedler challenges the aiding and abetting Count pled against her by with reference to facts outside the Complaint, *i.e.* that she allegedly had left Lento Law Group in February 2024. *See* ECF 16 at 12; ECF 16.1 at 8. The Complaint only avers that she left "between February 9, 2024, and May 13, 2024." Regardless, by concealing her departure from Mr. Missibi, she knowingly facilitated the ongoing unauthorized practice of law and subsequent tortious conduct by Lento Law Group. *See* ECF 1 at 6, ¶ 27. That alone is enough to support a finding of "substantial assistance" and sustain a claim for aiding and abetting tortious conduct. *See Taylor v. Am. Chemistry Council*, 576 F.3d 16, 35 (1st Cir. 2009); *Barnia v. Kaur*, No. CV 22-10216-MJJ, 2024 WL 914780, at *7 (D. Mass. Feb. 1, 2024) (observing that helping to conceal tortious conduct by another is enough to support aiding and abetting liability for certain torts). As to the challenge to the c. 93A claims, the fact that each of the Individual Defendants facilitated Lento Law Group's breach of its fiduciary duty to Mr. Missibi is enough to plausibly allege liability. *Professional Services Grp., Inc. v. Town of Rockland*, 515 F.Supp.2d 179, 192 (D. Mass. 2007) ("[a]iding and abetting a breach of fiduciary duty may provide the basis for a Chapter 93A violation").

**v. Counts X and XI**

Atty. Katz challenges Counts X and XI, *respondeat superior* liability and aiding and abetting tortious conduct pled against Lento Law Group. ECF 9 at 11-12. Atty. Katz lacks standing

to challenge these Counts. *See Firefighters' Retirement Sys. v. Citco Grp. Ltd.*, No. 13-373, 2017 WL 3492992, at *2 (M.D.La. Aug. 14, 2017) (denying a defendant's motion to dismiss filed on behalf of a co-defendant based on Fed. R. Civ. P. 11); *Ashcroft v. Dep't of Corrections*, No. 05-488, 2007 WL 1989265, at *8 (W.D.N.Y. July 6, 2007) (same); *see also Spillers v. Tillman*, 959 F. Supp. 364, 367 (S.D.Miss. Mar. 17, 1997) (Rule 11 "does not authorize one party to make representations or file pleadings on behalf of another. Rather, Rule 11 requires that each pleading, motion or other paper submitted to the court be signed by the party or its attorney of record, if represented").

**vi. Indemnity**

The Individual Defendants challenge Count XII, asserting it is available only as a derivative cause of action. ECF 9 at 12; ECF 16 at 12. While generally true, this is an overly myopic view of the tort, as in Massachusetts, common law indemnification is "available to one who is 'without fault, [and] compelled by operation of law to defend himself against the wrongful act of another.'" *Santos v. Chrysler Corp.*, 430 Mass. 198, 217, 715 N.E.2d 47 (1999) (quoting *Elias v. Unisys Corp.*, 410 Mass. 479, 482, 573 N.E.2d 946 (1991)). Plaintiff has pled that, as a consequence of the wrongful acts of the Defendants, has become enmired in a protracted licensure proceeding in Massachusetts. ECF 1 at 46. Count XII seeks indemnification for the cost of the legal representation necessary for the ongoing derivative Massachusetts licensure proceeding, as while it a distinct legal proceeding, it is nevertheless a direct consequence of the Defendants' tortious conduct. *Cf. Santos* (finding indemnity extended to separate post-trial appellate proceedings, indemnification extended to "the entire amount of its loss, including reasonable attorney's fees" of the subsequent derivative proceeding).

## IV. CONCLUSION

In accordance with the foregoing, the Plaintiff, Harrison Ngeah Missibi, respectfully requests that this Court DENY the Individual Defendants' Motions to Dismiss, ECF 9 and ECF 16, or in the alternative transfer this matter to the United States District Court for the District of New Hampshire pursuant to 28 U.S.C. §§ 1406(a) and 1631.

Respectfully submitted,
The Plaintiff,
**HARRISON NGEAH MISSIBI**,
By His Attorneys,

/s/Timothy Vaughan Malley
Sean E. Capplis, BBO #634740
Timothy Vaughan Malley, BBO #705603
CAPPLIS, CONNORS, CARROLL & ENNIS, PC
66 Brooks Drive, 2nd Floor
Braintree, MA 02184
T: 6l7-227-0722
F: 617-227-0772
E: scapplis@ccclaw.org
tmalley@ccclaw.org

Date: October 23, 2026

## CERTIFICATE OF SERVICE

I, Timothy Vaughan Malley, hereby certify that on **October 23, 2026,** I served the above Memorandum of Law upon the Clerk of the Court, using the CM/ECF system, which then sent a notification of such filing (NEF) to all counsel of record, with separate copy emailed directedly to the *pro se* Parties:

Lawrence A Katz, Sr., Esq. lakatzsr@gmail.com

Kristi Kay Kneedler, Esq. kristi.kneedler2@gmail.com

/s/Timothy Vaughan Malley