# EXHIBIT

# 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

HARRISON NGEAH MISSIBI,
Plaintiff,

v.

LENTO LAW GROUP, P.C.; LAWRENCE A. KATZ;
and KRISTI KAY KNEEDLER,
Defendants.

Civil Action No. 1:26-cv-13498-ADB

**DEFENDANT KATZ'S REPLY IN SUPPORT OF MOTION TO DISMISS OR TO TRANSFER VENUE**

Defendant Lawrence A. Katz, appearing pro se and solely on his own behalf, submits this reply to Plaintiff's consolidated opposition, ECF 19. Plaintiff's Massachusetts residence and receipt of communications do not eliminate the need to establish jurisdiction over Katz individually. The opposition does not cure the need for a plausible causal connection between Katz's own conduct and a materially worse disposition, or eliminate the distinction between jurisdictional evidence and permissible merits materials.

## I. **The requested relief concerns Katz alone.**

ECF 9 was filed by Katz individually. Its references to Lento and to Counts X and XI do not seek relief on the firm's behalf. Those counts name Lento; Katz requests no independent adjudication of them. The claims directed against Katz are Counts I, III, V, VII, XII, and XIII. Arguments addressed solely to Kneedler's departure, earlier settlement advice, or alleged assistance of others do not supply missing allegations against Katz.

## II. **Plaintiff has not established Massachusetts jurisdiction over Katz.**

### A. **The long arm statute requires a separate analysis.**

Plaintiff asserts that the Massachusetts long-arm statute reaches the constitutional limit and that the "only question" is due process. Opp. 6. *SCVNGR, Inc. v. Punchh, Inc.*, 478 Mass. 324, 325, 328–31 (2017), rejects that shortcut. A statutory basis must be established independently. Both individual defendants cited *SCVNGR*, but the opposition does not meaningfully address it.

Mass. Gen. Laws ch. 223A, § 3(a), is construed generously, and its "arising from" requirement employs a but-for test. *Doucet v. FCA US LLC*, 492 Mass. 204, 208–10 (2023). Katz does not demand physical presence or a restrictive proximate-cause test under that provision. He challenges the attribution and significance of the asserted Massachusetts business. The October 2023 inquiry and $350 consultation payment involved Lento before Katz's May 2024 assignment. Compl. 4, 6, ¶¶ 17–20, 29–32. The pleading does not identify Katz as directing that solicitation or controlling the website. A basis for attributing the firm's recruitment to Katz individually must be shown; his own later contacts must then be assessed.

Section 3(c) can reach intentional misrepresentations sent into Massachusetts; physical performance of work elsewhere does not categorically defeat that subsection. Section 3(d), governing out-of-state acts causing in-state injury, adds requirements of regular business,

persistent conduct, or substantial qualifying revenue. The opposition must identify a supported statutory basis for jurisdiction over Katz, rather than equate Plaintiff's residence and injury with satisfaction of every provision. Even statutory authorization does not settle due process: *D.F. Pray, Inc. v. Wesco Insurance Co.*, 103 Mass. App. Ct. 325, 330–36 (2023), found statutory jurisdiction but held that the out-of-state insurance dispute lacked the necessary constitutional connection. Thus, if the Court finds a statutory basis here, Katz's independent constitutional objection remains.

**B. Sawtelle remains closely applicable to the malpractice theory.**

*Sawtelle v. Farrell*, 70 F.3d 1381, 1389–94 (1st Cir. 1995), involved out-of-state lawyers advising forum residents concerning litigation elsewhere. Communications transmitting settlement recommendations were ancillary to the challenged investigation and negotiation outside the forum. The court characterized relatedness as tenuous and found purposeful availment lacking. An attorney-client relationship and communications with the resident client did not alone suffice.

Plaintiff's proposed distinction is that his personal history should have been investigated in Massachusetts. Opp. 10–11. But the object of Katz's work remained the defense and resolution of a New Hampshire disciplinary charge. The opposition identifies no Massachusetts appearance, investigation actually undertaken there, or transaction invoking Massachusetts law that produced the challenged New Hampshire disposition. It instead relocates the alleged omission to wherever Plaintiff lived. That theory would largely eliminate Sawtelle's distinction between professional work on an out-of-state matter and its effects on a client at home.

Katz does not contend that physical absence alone defeats jurisdiction, or that a strict causal test exhausts relatedness. The question is whether the particular contacts connect these claims to Massachusetts sufficiently. The prima facie inquiry credits properly supported factual proffers and resolves genuine factual disputes in Plaintiff's favor. It does not shift the burden to Katz to disprove

jurisdiction. A *Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 58 (1st Cir. 2016); *Motus, LLC v. CarData Consultants, Inc.*, 23 F.4th 115, 123–24 (1st Cir. 2022). The alleged errors in handling the New Hampshire matter, considered with Katz's limited forum contacts, do not establish that connection merely because advice and economic consequences reached Plaintiff there.

**C. Firm advertising does not establish jurisdiction over Katz automatically.**

Plaintiff emphasizes that the firm solicited his business online. The Complaint itself says Plaintiff first contacted Lento and its support team then requested payment. Compl. 4, ¶¶ 17–18. An affirmative response matters, but does not establish that Katz personally solicited the engagement, directed Massachusetts advertising, or authorized an agent to solicit on his individual behalf. Plaintiff must identify what conduct is attributable to this defendant and how it relates to the claims. In fact, Katz had and has no involvement in any aspect of the Firm's advertising, administration, fee setting and collection, or management. He is only a salaried W-2 employee.

*Stokinger v. Armslist, LLC*, 166 F.4th 229 (1st Cir. 2026), supplies no automatic rule for interactive websites. The court found website design and general capacity to facilitate local transactions insufficient standing alone. Its favorable purposeful-availment analysis depended on additional evidence of thousands of New Hampshire-tagged listings and the operator's knowing facilitation of that activity. It left relatedness to be addressed on remand. *Id.* at 235–41. *Motus* likewise explains that website accessibility and a means to communicate with the operator do not alone establish deliberate forum targeting. 23 F.4th at 124–26.

Here, Plaintiff identifies neither comparable evidence of Katz's operation of the website nor facts making the firm's website activity his own. Even assuming the website and ensuing solicitation support jurisdiction over Lento, Plaintiff must still establish jurisdiction over Katz. The

distinction rests on the identity and conduct of the defendant, not on any categorical immunity for internet-based legal services.

**D. The misrepresentation theories also require individual scrutiny.**

Communications constituting the alleged deception require separate analysis. *N. Am. Cath. Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8 (1st Cir. 2009), recognizes that false information specifically directed to a forum resident may support jurisdiction, and does not require particularized pleading of responsibility for another's acts. 567 F.3d at 17–18. Katz's objection is not a categorical rule against jurisdiction over remote advice or employee defendants; it is the absence of a sufficient supported connection between his own alleged conduct and the forum.

*Halks v. Kindley Firm, APC*, 766 F. Supp. 3d 295, 301, 308–11 (D. Mass. 2025), illustrates the distinction. In that referral-fee dispute, the court accepted the recommendation finding relatedness for allegedly false communications to a Massachusetts lawyer, but found purposeful availment lacking. The court did not hold that the fraud allegations were inadequately pleaded. Halks is not factually identical, but confirms that relatedness and purposeful availment remain separate even when misrepresentation is alleged.

Conversely, *Lawrence v. Next Insurance, Inc.*, 774 F. Supp. 3d 237, 250–57 (D. Mass. 2025), found purposeful availment where the defendant deliberately facilitated extensive employment services performed in Massachusetts through continuing remote communications. Here the professional undertaking concerned a New Hampshire tribunal and license, and Katz's challenged work was performed in New Jersey. ECF 9-1, ¶¶ 6–7. The Court must evaluate that undertaking and the alleged communications, rather than treat either remote communication or its receipt in Massachusetts as dispositive.

*Walden v. Fiore*, 571 U.S. 277, 284–90 (2014), requires contacts created by the defendant with the forum itself, including in intentional-tort cases. A relationship with a forum resident and foreseeable injury there do not alone establish the necessary connection. Plaintiff's reliance on Calder and Massachusetts injury does not answer that requirement. The nature and context of the particular alleged communication still matter.

The passages Plaintiff quotes from *PREP Tours, Inc. v. American Youth Soccer Organization*, 913 F.3d 11, 36–37 (1st Cir. 2019), come from the dissent, as Plaintiff acknowledges. Opp. 8, 15. They do not replace the governing inquiry into purposeful forum contacts. Electronic filing and videoconferencing likewise concern litigation burden; they cannot create otherwise absent contacts.

Katz disclosed later communications with a Massachusetts nursing-board investigator, describing them as post-disposition efforts to address collateral consequences. ECF 9-1, ¶ 9. *Harlow v. Children's Hospital*, 432 F.3d 50, 61–62 (1st Cir. 2005), explains that contacts arising after the cause of action generally do not establish specific jurisdiction over the earlier wrong. Stokinger also treats the relationship of later contacts to the claims as a distinct question. 166 F.4th at 235–36. These later contacts cannot simply be ignored, but the Complaint identifies no separate wrongful communication to that investigator causing additional injury. Their timing and actual relationship to each claim control.

Massachusetts has an interest in protecting its residents, and Plaintiff's choice of his home forum deserves consideration. New Hampshire nevertheless has a substantial interest in representation before its own nursing board, while New Jersey is Katz's domicile and the declared place of his work. The availability of remote hearings may lessen travel burdens, but does not

resolve the threshold defects in relatedness and purposeful availment. On this record, the reasonableness considerations do not supply a sufficient basis to retain the claims against Katz.

## III. If jurisdiction exists, the challenged claims remain deficient.

### A. The operative documents may be considered within their proper limits.

Plaintiff correctly distinguishes jurisdictional declarations from evidence admissible on Rule 12(b)(6). Katz does not seek a merits finding based on his declaration. *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993), however, recognizes limited exceptions for official public records and sufficiently referenced or central documents whose authenticity is not disputed. Freeman v. *Town of Hudson*, 714 F.3d 29, 36–37 (1st Cir. 2013), limits those exceptions: a passing reference does not incorporate an entire document, and mere possession by a public agency does not make every factual assertion judicially noticeable. The agency order can establish what appearance the presiding officer accepted; it does not prove the truth of every underlying representation. The surrender requires its own foundation as a central, sufficiently referenced, and authentic instrument.

The agency order denied the requested pro hac vice designation because the procedural rules did not contemplate it. It accepted Katz's appearance as a representative under Plc 206.09(a) and accepted his representation of compliance with Plc 206.09(f). Katz Ex. A, at 1. It did not confer unrestricted New Hampshire bar admission or adjudicate every possible unauthorized-practice issue. It nevertheless contradicts the unqualified premise that Katz never secured an accepted representative appearance. The application was submitted through New Hampshire attorney Keith Mathews. Id. at 1–2. Plaintiff's assertion that Katz never associated with New Hampshire counsel requires reconciliation with that record. Compl. 6, ¶ 32.

The signed document is expressly a voluntary surrender. Katz Ex. B, ¶¶ 1–13. Its terms make the surrender disciplinary, public, permanent, and reportable to other licensing authorities. The instrument does not establish that surrender and revocation are legally identical in every respect, and its board-acceptance block is blank. Katz does not ask the Court to determine what the board ultimately entered from this copy alone. If the Court finds the surrender's identity, authenticity, or relationship to the pleaded disposition insufficiently established for Rule 12(b)(6), it should exclude that document and address the independent pleading deficiencies below without converting the motion.

**B. Counts I and III do not explain the incremental loss attributable to Katz.**

Plaintiff need not prove his case, identify an expert, or submit an expert affidavit with the Complaint. He must nevertheless allege facts supporting a plausible causal connection between Katz's breach and his loss. The causation principles in *Fishman v. Brooks*, 396 Mass. 643, 646–47 (1986), and *Kiribati Seafood Co., LLC v. Dechert LLP*, 478 Mass. 111, 117–18 (2017), still require a loss attributable to the professional breach. Rule 8 does not eliminate that element. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

The opposition identifies a narrower theory than retention of an unrestricted license: surrender would have produced less harmful collateral consequences than revocation. Opp. 16–17. That is the theory to test. Katz does not insist that Plaintiff had to plead entitlement to complete exoneration. The deficiency is the absence of factual allegations explaining an attainable better disposition during Katz's representation and how its consequences would differ materially from the disciplinary surrender reflected in the signed instrument.

The November 2023 proposal was made before Katz assumed the matter. Compl. 5–6, ¶¶ 24, 29–30. Its existence does not establish that its terms remained available to him months later. The

signed surrender also expressly contemplated disciplinary distribution to other licensing authorities. Merely repeating that a revocation creates a "black mark" does not explain why the allegedly available surrender would avoid the particular employment or licensing consequence. Compl. 8, ¶¶ 43–46. No employer or licensing determination need be proved now, but some factual explanation of the asserted difference and its causal significance is required.

If Plaintiff's theory instead is that Katz secured a surrender but the board entered a different disposition, the Complaint does not explain what Katz did or omitted that caused that divergence. Katz does not contend that a board's decision automatically breaks causation. Kiribati rejects such a categorical superseding-cause defense to foreseeable adjudicative error. 478 Mass. at 119–21. Nor does a signed settlement bar an informed-advice claim: *Marston v. Orlando*, 95 Mass. App. Ct. 526, 536–37 (2019), recognizes counsel's duty to disclose material collateral risks. The narrower deficiency is the absence of a coherent factual account of the asserted additional harm attributable to Katz. Count III's allegations of deficient disclosure do not avoid the same causation issue. The Court should dismiss these counts or require an amended pleading that identifies the proposed alternative outcome and its causal connection to the losses alleged.

### C. Counts V and VII require a false statement and resulting reliance.

Rule 9(b) requires particularized fraud allegations and a factual basis supporting the alleged fraudulent state of mind. *Cardinale*, 567 F.3d at 13. Plaintiff points principally to the allegation that Katz represented that he was authorized to act in New Hampshire. Opp. 19. The underlying paragraph attributes representations to "Defendants," expressly or by implication, without identifying when Katz made the challenged representation or what he said about the scope of his authority. Compl. 7, ¶ 36.

The fact that a licensing issue was raised does not itself establish that Katz knowingly lied about an accepted representative appearance. The July 22 order makes that distinction material. Likewise, advice concerning collateral consequences is not adequately pleaded as intentional fraud merely by asserting that the result was worse than expected. The opposition's inference that statements were intended to retain the client does not supply the missing circumstances or factual basis for knowing falsity.

Negligent misrepresentation has a lower mental-state requirement, but still requires false information, justifiable reliance, and pecuniary loss caused by that reliance. *Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.*, 455 Mass. 458, 471–72 (2009). Katz does not contend that this tort is categorically barred whenever malpractice is also pleaded. Even assuming Rule 8 alone governs Count VII, it needs a plausible account of what information was false, how Plaintiff relied on it, and how that reliance caused a different outcome. The written disciplinary and reporting provisions bear on that assessment if properly considered. They do not conclusively establish that Katz gave adequate advice or that every alleged oral statement was harmless.

**D. Count XIII requires more than a negligence label.**

*Meyer v. Wagner*, 429 Mass. 410, 423–24 (1999), distinguishes negligence from unfair or deceptive conduct under Chapter 93A. It does not establish blanket immunity for lawyers, nor does Katz contend that deception during representation is categorically outside the statute. Plaintiff still must plead facts supporting the unfair or deceptive conduct charged to Katz. Count XIII repeats the disputed authority and disposition allegations without curing their deficiencies. *Frullo v. Landenberger*, 61 Mass. App. Ct. 814, 822–23 (2004), expressly recognizes that Chapter 93A applies to attorneys while requiring causation of the claimed loss. Katz invokes that substantive requirement, not Frullo's summary-judgment evidentiary burden.

Plaintiff answers with a general proposition about aiding a fiduciary breach. Opp. 20. Knowing assistance requires an identified breach, knowledge, and active participation or substantial assistance. *Arcidi v. National Ass'n of Government Employees, Inc.*, 447 Mass. 616, 623–24 (2006). The general proposition does not establish those matters against Katz or cure the alleged deception and causation deficiencies in the claim actually pleaded against him. If the Court concludes the existing misrepresentation allegations are sufficient, it should assess Chapter 93A on that basis; otherwise the statutory labels do not independently save the count.

**E. Count XII does not plead a basis for common law indemnification.**

Plaintiff now identifies legal expenses in a Massachusetts licensing proceeding as the indemnified loss. Opp. 21. Those expenses may be claimed as consequential damages if supported by a viable tort and causation. Their existence does not itself establish an independent right to indemnification.

*Elias v. Unisys Corp.*, 410 Mass. 479, 481–83 (1991), discusses indemnity in the context of derivative liability, including an innocent employer's liability for an employee's wrongdoing. Plaintiff alleges no comparable derivative liability for Katz's wrongful act. He describes proceedings concerning his own qualifications and licensing record. Calling the later proceeding "derivative" because it followed the New Hampshire matter does not establish derivative liability in the indemnity sense.

*Santos v. Chrysler Corp.*, 430 Mass. 198, 217–18 (1999), does allow appellate fees after an innocent automobile dealer established its common-law right to indemnity from the manufacturer. That holding concerns the scope of recovery once entitlement exists. It does not hold that every separate proceeding resulting from another person's conduct creates that entitlement. *Decker v. Black & Decker Manufacturing Co.*, 389 Mass. 35, 40–41 (1983), limits common-law indemnity

to derivative or vicarious liability rather than the indemnitee's own direct liability. Plaintiff has not pleaded the corresponding basis here. Count XII should be dismissed against Katz without deciding whether particular remedial expenses may be consequential damages under a surviving tort claim.

## IV. Transfer remains an alternative to dismissal.

If jurisdiction is lacking, Katz maintains his alternative request for transfer under § 1631 or, where venue is defective, § 1406(a). If the Court retains jurisdiction, his convenience-transfer request arises under § 1404(a). These distinct routes should not be conflated. He acknowledges the presumption favoring transfer described in *Subsalve USA Corp. v. Watson Manufacturing, Inc.*, 462 F.3d 41, 43 (1st Cir. 2006). That presumption does not select the transferee district. New Jersey is Katz's domicile and the declared location of his challenged work and firm records. ECF 9-1, ¶¶ 2–8.

Plaintiff fairly identifies a separate question concerning New Jersey jurisdiction over Kneedler. Opp. 15. Katz does not purport to consent for her or resolve that question through her employment alone. For the entire action, § 1391(b)(1) requires all defendants to reside in the same State; Katz's New Jersey domicile alone does not establish that condition. The Court must assess a proper alternative basis, including substantial events under § 1391(b)(2), and the applicable transfer prerequisites for all defendants. See 28 U.S.C. §§ 1391(b), 1404(a), 1406(a), 1631. New Hampshire's connection to the board proceeding also deserves consideration. Counsel's admission there and the convenience of electronic filing do not alone resolve the competing considerations. See *Coady v. Ashcraft & Gerel*, 223 F.3d 1, 11 (1st Cir. 2000).

Katz requests New Jersey transfer if its statutory prerequisites are satisfied. If the Court instead finds New Hampshire to be the proper available transferee, the jurisdictional ruling should

still recognize that Plaintiff has not established a Massachusetts forum merely by showing that an alternative forum exists. A transfer ruling should preserve merits defenses for the receiving court. The Rule 12(b)(6) arguments above are presented only if this Court first concludes it may adjudicate the merits against Katz.

## V. Conclusion

Katz requests dismissal without prejudice of the claims against him for lack of personal jurisdiction or, alternatively, transfer as discussed above. If the Court retains jurisdiction, he requests dismissal of Counts I, III, V, VII, XII, and XIII against him to the extent explained, with leave to amend where a deficiency may be cured. He seeks no relief on behalf of Lento or Kneedler.

Respectfully submitted,

/s/ Lawrence A. Katz
**LAWRENCE A. KATZ, DEFENDANT PRO SE**
17 42nd Street, Unit 7
Sea Isle City, NJ 08243
Telephone: 267-242-4191
Email: lakatzsr@gmail.com
Dated: 11-2-2026

Certificate of Service

I certify that on 11-2-2026, I served the foregoing document on all counsel of ECF distribution.

/s/ Lawrence A. Katz
**LAWRENCE A. KATZ**