# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| HARRISON NGEAH MISSIBI,<br>Plaintiff,<br><br>v.<br><br>LENTO LAW GROUP, P.C.; LAWRENCE A. KATZ; and KRISTI KAY KNEEDLER,<br>Defendants. | Civil Action No. 1:26-cv-13498-ADB |

**DEFENDANT KRISTI KAY KNEEDLER'S REPLY IN SUPPORT OF HER MOTION TO DISMISS**

Defendant Kristi Kay Kneedler ("Ms. Kneedler"), appearing pro se, submits this reply to Plaintiff's consolidated opposition (ECF 19, "Opp.") to the motions to dismiss filed by Ms. Kneedler and Defendant Lawrence A. Katz. This reply addresses only the arguments that require a response.

The opposition confirms that Plaintiff's claims against Ms. Kneedler rest on where Plaintiff lived and on what other people did. To reach her, the opposition attributes Lento's online solicitation to her, relocates an alleged failure to investigate to Plaintiff's home, and recasts a February 2024 status update as fraud, a theory the Complaint never pleads. The opposition also concedes the point that defeats causation. Plaintiff now says a voluntary surrender remained available after Ms. Kneedler left, while Mr. Katz handled the matter. None of these arguments cures the defects in the Complaint.

## ARGUMENT

### I. Plaintiff has not established personal jurisdiction over Ms. Kneedler.

#### A. The opposition does not address the long-arm statute.

Plaintiff contends that the Massachusetts long-arm statute reaches the limits of due process, so that the "only question" is constitutional. Opp. 6. Ms. Kneedler's memorandum explained why

that shortcut fails. Under *SCVNGR, Inc. v. Punchh, Inc.*, 478 Mass. 324, 325-26 (2017), the statute is not simply coextensive with due process, and the Court addresses it first. The opposition never mentions *SCVNGR*.

The opposition's only statutory argument is a single sentence invoking §§ 3(a) and 3(d). Opp. 13. Section 3(d) reaches out-of-state conduct only if the defendant regularly does or solicits business, engages in a persistent course of conduct, or derives substantial revenue from services rendered in Massachusetts. Plaintiff disclaims any contention that Ms. Kneedler is at home in Massachusetts. Opp. 12-13. Ms. Kneedler declared that she did none of the things § 3(d) requires. Kneedler Decl. ¶ 11. The opposition calls that declaration "misleading" but identifies no fact that contradicts it. Opp. 12. Under the standard Plaintiff himself invokes, the Court may add to the mix facts put forward by a defendant to the extent they are uncontradicted. Opp. 4-5. A characterization is not a contradiction. Section 3(a) fails for the reasons set out in Part I.B, because the only Massachusetts business the opposition identifies belongs to Lento.

### B. Lento's solicitation is not Ms. Kneedler's contact with Massachusetts.

The opposition's central jurisdictional argument is that Lento's website solicited Massachusetts business and that Lento's "law support team" contacted Plaintiff and requested a $350 consultation fee. Opp. 11-12. The Complaint places that solicitation on October 6, 2023. Compl. ¶¶ 17-18. Lento did not assign Ms. Kneedler to the matter until on or about October 20, 2023. Compl. ¶ 20. The Complaint does not allege that Ms. Kneedler designed, operated, or directed the website, supervised the support team, set the fee, or played any role in recruiting Plaintiff. She did none of those things. Kneedler Decl. ¶ 10.

The opposition all but concedes the gap. It argues that, "[r]egardless of whether" Ms. Kneedler personally solicited business, Lento did so "on her behalf." Opp. 13. Nothing in the

Complaint supports that characterization. A firm that advertises for its own clients and collects its own fees acts for itself. The firm does not become the agent of every lawyer it later assigns to a matter. Jurisdiction depends on contacts the defendant herself creates with the forum, and a relationship with a forum resident does not alone supply them. *Walden v. Fiore*, 571 U.S. 277, 284-90 (2014).

*Stokinger v. Armslist, LLC*, 166 F.4th 229 (1st Cir. 2026), does not help Plaintiff. As the opposition describes the case, jurisdiction rested on evidence that the defendant knew it was intentionally operating its own website to facilitate sales in the forum. Opp. 12-13. Plaintiff alleges no comparable fact about Ms. Kneedler. She operated no website. *Sawtelle* makes the same point. The firms there marketed themselves as national firms, but the First Circuit focused on how the defendants actually came to the representation. Opp. 11 (quoting *Sawtelle v. Farrell*, 70 F.3d 1381, 1393 (1st Cir. 1995)). Ms. Kneedler came to this representation by assignment from her employer, after Plaintiff had already contacted the firm.

### C. The investigation theory relocates an alleged omission to Plaintiff's home.

Plaintiff next argues that relatedness is satisfied because the investigation of his personal history "was, or should have been, conducted in Massachusetts." Opp. 11. The opposition offers this as a "reasonable inference" from the Complaint. The cited paragraphs allege no investigation in Massachusetts and no Massachusetts source that Ms. Kneedler failed to consult. Ms. Kneedler performed none of her work on the matter in Massachusetts. Kneedler Decl. ¶ 7.

The theory also proves too much. A client's personal history travels with the client. If an alleged failure to investigate that history occurs wherever the client lives, every lawyer who advises a client at home about an out-of-state proceeding is subject to suit in the client's home state. *Sawtelle* rejected that result. The plaintiffs there argued that out-of-state lawyers directed

negligent advice into their home state, and the First Circuit held that they had suffered at home only the "effects" of negligence committed elsewhere. Ms. Kneedler's work likewise concerned a New Hampshire tribunal, a New Hampshire prosecutor's offer, and a New Hampshire license.

The opposition's remaining authorities do not change the analysis. Its statement that courts focus on the target and effects of remote communications comes from a dissent. Opp. 8. Its "fair warning" language comes from a concurrence. Opp. 7. *Calder v. Jones*, 465 U.S. 783 (1984), involved intentional conduct whose effects were felt in the forum, and *Walden* confirms that the defendant's own forum contacts control even in intentional-tort cases. 571 U.S. at 284-90. Plaintiff identifies no forum contact that Ms. Kneedler created beyond communicating with a client where he happened to live.

## II. Ms. Kneedler seeks dismissal and takes no position on transfer.

Plaintiff asks, in the alternative, that the Court transfer this action to the District of New Hampshire rather than dismiss it. Opp. 22. Mr. Katz asks for transfer to the District of New Jersey. Ms. Kneedler does not join either request, and Mr. Katz does not purport to consent on her behalf.

Ms. Kneedler asks the Court to dismiss the claims against her for the reasons stated in her motion and in this reply. If the Court declines to dismiss those claims, Ms. Kneedler takes no position on whether they remain in this District or are transferred, or on which district should receive them. She asks only that any transfer order preserve her Rule 12(b)(6) arguments and her personal-jurisdiction defenses for the receiving court.

## III. The opposition does not cure the pleading defects.

### A. Ms. Kneedler's Rule 12(b)(6) arguments rest on the Complaint, not her declaration.

Plaintiff accuses Ms. Kneedler of using her declaration to "engineer disputes of fact." Opp. 16. Plaintiff concedes that the declaration may be considered on the jurisdictional challenge. Ms. Kneedler's Rule 12(b)(6) arguments do not depend on it, and the Court may disregard it for that purpose. Plaintiff objects in particular that the February 23, 2024 departure date comes from outside the Complaint. Opp. 20. The date does not matter. The Complaint itself alleges that Ms. Kneedler left between February 9 and May 13, 2024, Compl. ¶ 26, and that Mr. Katz did not take over until May 22 and 23, 2024. Compl. ¶¶ 29-30. On either date, Ms. Kneedler was gone before Mr. Katz arrived.

### B. Plaintiff's causation theory points to Mr. Katz's representation.

Plaintiff's causation argument links the two lawyers' conduct to a single result. Ms. Kneedler recommended rejecting the November 2023 surrender proposal, and Mr. Katz "negotiated an outcome which led to a revocation rather than a voluntary surrender." Opp. 16. Plaintiff then argues that he would have avoided the consequences of revocation had he surrendered his license "either when it was offered during Atty. Kneedler's representation or subsequently during Atty. Katz's representation." Opp. 16-17.

That concession defeats causation as to Ms. Kneedler. If a surrender remained available after she left, her November 2023 recommendation did not cost Plaintiff the surrender. Whatever kept Plaintiff from obtaining it happened during the later representation, which the Complaint attributes to Mr. Katz. Compl. ¶ 31. If the November 2023 terms were no longer available, the Complaint must say what those terms were and why they were better. The Complaint does not allege the proposal's terms, its collateral consequences, or that it remained available. A legal-

malpractice plaintiff must show that he probably would have obtained a better result with adequate representation. *Fishman v. Brooks*, 396 Mass. 643, 647 (1986). Under either version of Plaintiff's theory, the Complaint does not plausibly connect Ms. Kneedler's advice to the loss he claims.

Plaintiff's reliance on paragraph 43 of the Complaint confirms the point. Paragraph 43 faults Defendants for failing to explain the difference between revocation and voluntary surrender and the consequences of revocation. Those explanations concerned the final disposition, which was executed in October 2024, months after Ms. Kneedler left.

### C. Ms. Kneedler did not ask for expert support at the pleading stage.

The opposition argues that Ms. Kneedler improperly seeks expert support for the standard of care at the pleading stage. Opp. 17. She does not. Her argument is that the Complaint pleads no facts showing why her recommendation fell below the standard of care. The Complaint alleges that Plaintiff maintained throughout the proceeding that he was a victim of the diploma scheme, not a knowing participant. Compl. ¶ 17. Recommending that a client contest a charge the client denies is not, without more, negligence. The opposition adds that she gave the advice without consulting a New Hampshire attorney or educating herself about the consequences. Opp. 18. Even accepting that gloss, the Complaint still does not allege what competent counsel would have advised or why. Labels and conclusions do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### D. Count IV stands or falls with Count II.

Plaintiff defends Count IV only by repeating his causation theory. Opp. 18. He identifies no act of disloyalty, self-dealing, or other fiduciary misconduct distinct from the alleged negligence. Count IV fails for the same reasons as Count II.

### E. The Complaint does not plead the new fraud theory, and the theory fails on its own terms.

The opposition offers a new basis for Counts VI and VIII. It argues that Ms. Kneedler committed fraud when she told Plaintiff on February 9, 2024 that she had found local counsel and would continue the representation, and then withdrew. Opp. 19. Count VI does not plead that theory. Count VI alleges only that, "[t]o the extent" Ms. Kneedler made or failed to correct false representations, those representations concerned the adequacy of the representation, counsel's authority, or the nature and consequences of the proposed disposition. Compl. ¶ 70. The February 9 communication appears only in the factual background. Compl. ¶ 25. Plaintiff cannot amend his Complaint through an opposition brief. Plaintiff has not moved to amend, and absent exceptional circumstances a district court is under no obligation to offer leave to amend that has not been requested by motion. Hochendoner v. Genzyme Corp., 823 F.3d 724, 735-36 (1st Cir. 2016). Rule 9(b) also requires the Complaint itself to specify the time, place, and content of the alleged false representation. *Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985).

The new theory also fails on its merits. First, the Complaint does not allege that any part of the February 9 statement was false when made. It alleges that Ms. Kneedler had found a New Hampshire attorney, and it identifies that attorney, Larry Vogelman, as her affiliated local counsel. Compl. ¶¶ 25, 27. A statement later overtaken by events is not a knowingly false representation of fact. Second, Count VI pleads only that Ms. Kneedler "knew or should have known" that the unspecified representations were false. Compl. ¶ 71. That is a negligence standard, not the knowledge or recklessness that fraud requires. The opposition's suggested motive, that Defendants lied to keep Plaintiff as a Lento client, Opp. 20, is implausible as to a lawyer who, by the Complaint's own account, left Lento within three months of the statement. Compl. ¶ 26.

Third, the Complaint attributes the consequences Plaintiff describes to others. It alleges that Lento failed to disclose Attorney Vogelman's withdrawal and took no action to replace counsel before the May 13, 2024 proceeding. Compl. ¶¶ 27-28. It alleges that the revocation resulted from a consent agreement executed in October 2024 during Mr. Katz's representation. Compl. ¶ 31. The Complaint pleads no facts connecting the February 9 statement to that disposition.

Count VIII fails for the same reasons. Negligent misrepresentation requires false information, justifiable reliance, and pecuniary loss caused by that reliance. A report of a lawyer's present plans is not false information about an existing fact, and the Complaint pleads no loss caused by reliance on that report.

### F. Count IX does not plead knowing assistance.

Count IX alleges that Ms. Kneedler aided torts committed by Mr. Katz. Compl. ¶¶ 82-84. The opposition now argues that, by concealing her departure, she knowingly facilitated unauthorized practice and tortious conduct by Lento. Opp. 20. The paragraph Plaintiff cites for that proposition alleges that Lento, not Ms. Kneedler, failed to disclose Attorney Vogelman's withdrawal. Compl. ¶ 27. The Complaint's allegation about Ms. Kneedler is that she withdrew without informing Plaintiff. Compl. ¶ 26. A failure to notify a client of a departure is, at most, the professional omission pleaded in Count II. It is not knowing, substantial assistance to another person's tort.

Aiding and abetting also requires actual knowledge of the underlying breach. *Arcidi v. Nat'l Ass'n of Gov't Emps., Inc.*, 447 Mass. 616, 623-24 (2006). Count IX alleges only that Ms. Kneedler "knew or should have known" of the alleged wrongdoing. Compl. ¶ 83. The opposition does not respond to that defect. Nor does it explain how Ms. Kneedler could have known of, or assisted, a representation by Mr. Katz that began after she left.

**G. Count XIII does not name Ms. Kneedler.**

The opposition argues that "each of the Individual Defendants" facilitated a fiduciary breach sufficient to support Chapter 93A liability. Opp. 20. Count XIII is pleaded against Mr. Katz and Lento only. Compl. at 15 (Count XIII). No Chapter 93A claim is pending against Ms. Kneedler, and Plaintiff cannot add one through his brief.

**H. Count XII does not plead a right to indemnity.**

Plaintiff agrees that common-law indemnity is generally derivative, but he relies on language describing indemnity for one who is without fault and "compelled by operation of law to defend himself against the wrongful act of another." Opp. 21. Plaintiff now identifies the indemnified loss as legal fees in a Massachusetts licensure proceeding. That proceeding concerns Plaintiff's own application for a Massachusetts license. Compl. ¶ 46. Plaintiff is not defending against anyone's wrongful act in that proceeding, and no third party has imposed liability on him because of Ms. Kneedler's conduct. Massachusetts limits common-law indemnity to a party held derivatively or vicariously liable for another's wrongful act. *Decker v. Black & Decker Mfg. Co.*, 389 Mass. 35, 40-41 (1983). *Santos* addressed the scope of recovery for a party that had already established its right to indemnity. It did not create a right of indemnity for a plaintiff's own litigation expenses. At most, those expenses are consequential damages under a viable tort claim, and Count XII adds nothing to the tort counts.

## CONCLUSION

The opposition confirms that Plaintiff's case against Ms. Kneedler rests on his own residence, his former law firm's marketing, and a representation that another lawyer completed months after she left. The Court should dismiss all claims against Ms. Kneedler under Rule

12(b)(2). In the alternative, the Court should dismiss Counts II, IV, VI, VIII, IX, and XII under Rule 12(b)(6).

Respectfully submitted,

/s/ Kristi Kay Kneedler
KRISTI KAY KNEEDLER (Pro se)
174 Water Color Way, Suite 103, #175
Santa Rosa Beach, FL 32459
Telephone: (850) 353-3254
Email: kkneedler@mwlawfirm.com

Dated: November ___, 2026

**CERTIFICATE OF SERVICE**

I certify that on November 12, 2026, I served the foregoing reply by electronic mail on the following:

Sean E. Capplis, Esq.
Timothy Vaughan Malley, Esq.
Capplis, Connors, Carroll & Ennis, PC
66 Brooks Drive, 2nd Floor, Braintree, MA 02184
scapplis@ccclaw.org
tmalley@ccclaw.org
Counsel for Plaintiff

Lawrence A. Katz
17 42nd Street, Unit 7, Sea Isle City, NJ 08243
lakatzsr@gmail.com
Defendant, pro se

/s/ Kristi Kay Kneedler
Kristi Kay Kneedler (Pro se)